# IN THE UNITED STATES COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:17-cr-154 |
| ) | The Honorable T.S. Ellis, III |
| KEVIN MALLORY, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM OF LAW REGARDING RELEVANCE OF EVIDENCE INCONSISTENT WITH A CULPABLE STATE OF MIND

The defendant, Kevin Mallory, by counsel, respectfully submits this Memorandum of Law in support of the conclusion, discussed at the Court's hearing on March 9, 2018, that certain classified information is relevant and admissible. This information establishes that Mr. Mallory, over a twenty-year career in the U.S. intelligence community ("USIC"), worked on several highly classified and sensitive projects that would be of enormous interest and value to the People's Republic of China ("PRC"), but that are not alleged to have been disclosed. In addition, Mr. Mallory was highly trained and experienced in counterintelligence techniques and operations, and the manner in which Mr. Mallory dealt with PRC nationals and self-disclosed his activities to the USIC was entirely consistent with this background. As described further below, admitting this relevant information at trial is essential to Mr. Mallory's defense.

## ARGUMENT

Evidence is relevant if it has any tendency to make a fact more or less probable and it is of consequence in determining the action. Fed. R. Evid. 402. Relevant evidence is admissible so long as its probative value is not substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

1. <u>The Evidence That Mr. Mallory Seeks to Admit Is Relevant Because Mr. Mallory's Intent is an Essential Element of the Charged Offense</u>

Mr. Mallory faces charges under 18 U.S.C. § 794, which requires the government to prove, beyond a reasonable doubt, that Mr. Mallory acted "with intent or reason to believe that [the information disclosed] is to be used to the injury of the United States or to the advantage of a foreign nation." This specific intent element "requires those prosecuted to have acted in bad faith." *Gorin v. United States*, 312 U.S. 19, 28 (1941). Of course, evidence of Mr. Mallory's specific intent is necessarily circumstantial. *See United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983); *Cramer v. United States*, 325 U.S. 1, 31 (1945) ("What is designed in the mind of an accused never is susceptible of proof by direct testimony."); *United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2018) ("Circumstantial evidence regarding a criminal defendant's state of mind . . . is admissible."). And "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

Accordingly, just as with inculpatory evidence, evidence tending to show that the defendant's state of mind was inconsistent with the requisite *mens rea* during the charged conduct is relevant and admissible. For example, in *United States v. Hayes*, 219 Fed. Appx. 114 (3d Cir. 2007), the government alleged that the defendant conspired with other employees at his company to "falsify test results for various petroleum products." *Id.* at 115. To counter the government's evidence that the defendant had "pressur[ed] employees to ignore company policy and fabricate test results," the defendant sought to introduce evidence from other employees that he "never asked them to falsify tests" and "never suggested that data falsification was acceptable." *Id.* at 116-17. Such evidence tended to show that the defendant's actions "were inconsistent with conspiring to

2

fabricate test results" because a person involved in the conspiracy likely would have told those employees to falsify results, and its exclusion therefore warranted a new trial. *Id*. Other courts have reached the same conclusion that evidence of specific conduct that tends to be inconsistent with the charged *mens rea* is relevant and admissible. *See United States v. Shavin*, 287 F.2d 647, 652-54 (7th Cir. 1961) (holding that defendant charged in fraudulent medical billing scheme should have been permitted to introduce examples of accurate bills); *United States v. Marlinga*, 457 F. Supp. 2d 769, 773-76 (E.D. Mich. 2006) (the evidence "provides a plausible alternative to the Government's suggestion that [defendant] had criminal intentions . . . [and the] proposed evidence is essential to developing this alternative theory."); *United States v. Pelkey*, 46 M.J. 56, 60 (C.A.A.F. 1997) (evidence that a defendant saved his wife's life a few months before she was found dead is "relevant to show a state of mind on the part of appellant inconsistent with a specific intent to kill his wife").

Moreover, this Court has recognized the relevance of such ancillary conduct in the context of the Espionage Act. Specifically, in *United States v. Rosen*, the defendants sought to introduce evidence that they had engaged in meetings with U.S. government officials that did not involve national defense information ("NDI") to show that they had no intent to violate the statute with respect to the meetings charged as overt acts in the indictment. The government objected on grounds very similar to those asserted in this case, that "whether defendants occasionally had conversations with government officials that did not involve unauthorized NDI disclosures has no bearing on whether, in the overt acts alleged in the Indictment, defendants broke the law by conspiring to obtain and disclose NDI to those not authorized to receive it." 520 F. Supp.2d 802, 812 (E.D. Va. 2007). This Court rejected the government's position, stating that "[t]his argument misses an important point" which is that "circumstantial evidence can be probative of the lack of

criminal intent." *Id*. (*citing United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) ("as a general rule most evidence of intent is circumstantial")). This Court's evidentiary ruling in *Rosen* was correct, and warrants admission of analogous evidence in this case.

Here, the government plans to present circumstantial evidence to show that Mr. Mallory was in financial distress and for that reason violated the Espionage Act by conspiring, selling, and attempting to sell classified information that he intended or had reason to believe was "to be used to the injury of the United States or to the advantage of a foreign nation." His belief that such information was essentially worthless is no less relevant to his state of mind than evidence that he possessed far more sensitive classified information of which no evidence shows any effort to sell or disclose to the PRC. In other words, the fact that neither the documents at issue nor the communications between Mr. Mallory and PRC nationals involved this more sensitive information supports inferences that (1) financial motivations did not in fact drive Mr. Mallory to offer even more valuable information; and (2) if he actually had been acting in bad faith, he would have offered such information to PRC nationals. Evidence that Mr. Mallory possessed this more valuable information and did not offer it thus tends to show he was not acting in bad faith and was not intending to harm the United States or aid the PRC.

Conjecture that Mr. Mallory could have offered such truly valuable information in a later meeting, or that Mr. Mallory actually disclosed such information while in the PRC, is mere speculation that does not alter the fact that such evidence is relevant and essential to Mr. Mallory's defense. *See, e.g.*, *Worthington v. United States*, 64 F.2d 936, 940 (7th Cir. 1933) ("Such evidence, while not conclusively disproving the existence of a fraudulent scheme or purpose on appellant's part, would tend to refute the Government's evidence tending to establish a fraudulent scheme.").

As in the cases discussed above, evidence that Mr. Mallory was aware of far more sensitive and valuable information than the information at issue in the indictment, and the absence of any evidence of an effort to disclose this more valuable information, is admissible as it negates the probable conduct of a person acting in bad faith and with the specific intent to harm the United States or benefit a foreign nation. These facts directly undercut the government's presumed motive evidence, and Mr. Mallory should be permitted to admit them because they are critical to his constitutional right to present a defense in this case.

2. Mr. Mallory's Training and Experience in Counterintelligence Provides Vital Context for Understanding His Actions and State of Mind

Mr. Mallory also seeks to enter into evidence information describing his long history of training and experience in counterintelligence techniques and operations. This information is necessary to provide context for Mr. Mallory's conduct in this case, his good faith efforts to keep the USIC appraised of his activities, and his desire to avoid exactly the situation he now finds himself in. This evidence is both relevant and admissible because it is essential to understand Mr. Mallory's actions and his state of mind.

Counterintelligence operations have for decades—and likely much longer—involved "aggressive" counterespionage activities that involve the provision of actual or purportedly classified information to potential agents of a foreign intelligence service. *See* SENATE SELECT COMM. TO STUDY GOVERNMENTAL OPERATIONS WITH RESPECT TO INTELLIGENCE ACTIVITIES AND THE RIGHTS OF AMERICANS (BOOK I), S. Rep. No. 94-755 (1976) ("Church Committee Report"), at 166-68 (discussing goals of counterespionage and the difficulty of "passing credible documents" to opposing foreign intelligence services). In so doing, the aim is to pass "credible documents," including "fake papers [that appear] plausible," and occasionally "the genuine article," in order to make the operation "interesting to the opposition." *Id.* at 166-68.

In *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990), the court affirmed the trial court's dismissal of a criminal case against a Central Intelligence Agency station chief charged with making false statements to the Inspector General. After the government moved to exclude or substitute classified evidence of the defendant's work in Costa Rica, the court found that "the nature of the charges against [the defendant] demand that he be able to place his job before the jury in a concrete, palpable context, and that he be able to explain his understanding of the world in which he worked. Only against such a background could the jury realistically and fairly evaluate his allegedly false statements." *Id.* at 164. Likewise, in *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72 (2d Cir. 2014), the Second Circuit vacated conspiracy and fraud convictions on the grounds that the district court improperly excluded evidence of the defendant's good faith, leaving the jury without "vital context and corroboration for the defendants' defense of good faith and lack of criminal intent." And in *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015), the Second Circuit vacated a conviction for securities fraud on the grounds that it was an abuse of discretion to exclude evidence that the defendant's supervisors knew and approved of other employees making similar misrepresentations as the defendant had. The evidence was relevant to "introduce a reasonable doubt as to his intent to defraud, *i.e.*, that he held an honest belief that his conduct was not improper or unlawful, a belief the jury may have found more plausible in light of his supervisors' approval of his colleagues' substantially similar behavior." *Id*.

Here, evidence of Mr. Mallory's counterintelligence training and experience provides vital background for understanding his good faith intentions. Mr. Mallory, in the course of trying to obtain compensation for legitimate consulting services, took extensive steps to determine the legitimacy and motives of the individuals with whom he was dealing. This involved engaging in

6

the same types of counterespionage activities in which he was trained both by the military and the USIC, including the delivery of "fake papers [that appeared] plausible." Mr. Mallory also took multiple good faith efforts to inform the USIC about what he was doing and seek guidance, while also trying to continue to appear to be a target "interesting to the opposition." Church Committee Report at 167.

Someone without Mr. Mallory's training and experience within the intelligence community would have difficulty explaining that similar conduct was undertaken in good faith. But such conduct, when placed in the proper context of Mr. Mallory's training and background, appears very differently. Exclusion of this evidence thus would harm Mr. Mallory by preventing the jury from placing Mr. Mallory's actions within the context of the USIC background in which Mr. Mallory spent his career. Mr. Mallory's actions were consistent with this background, and evidence of his training and experience in counterintelligence are therefore highly probative of his state of mind.

## CONCLUSION

For the above reasons, Mr. Mallory's should be permitted to introduce evidence at trial to show that: (1) over a twenty-year career in the USIC, he worked on several highly classified and sensitive projects for the USIC, several of which in particular would be of enormous interest and value to the PRC; (2) the information Mr. Mallory is alleged to have shared or attempted to disclose had comparatively little value; and (3) Mr. Mallory was trained and experienced in counterintelligence techniques and his actions to vet the PRC nationals and inform the USIC of his activities were consistent with this background. Preventing Mr. Mallory from admitting an appropriate degree of detail supporting these categories of information would be highly detrimental to his constitutional right to assert a defense.

Respectfully Submitted,

KEVIN PATRICK MALLORY

By Counsel,

_____/s/_____
Geremy C. Kamens
Virginia Bar No. 41596
Federal Public Defender
Todd M. Richman
Virginia Bar No. 41834
Assistant Federal Public Defender
Attorneys for Mr. Mallory
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org

**CERTIFICATE OF SERVICE**

        I hereby certify that on the 19th day of March 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Gibbs, Esq.
Jennifer Gellie, Esq.
Colleen Garcia, Esq.
Assistant U.S. Attorneys

                                                    /s/
                                      Geremy C. Kamens
                                      Virginia Bar No. 41596
                                      Federal Public Defender
                                      Attorney for Mr. Mallory
                                      Office of the Federal Public Defender
                                      1650 King Street, Suite 500
                                      Alexandria, VA 22314
                                      Telephone: (703) 600-0800
                                      Facsimile: (703) 600-0880
                                      Geremy_Kamens@fd.org