UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

------------------------------:
                              :
UNITED STATES OF AMERICA      :
                              :
                              :
    -vs-                      :   Case No. 1:17-cr-154
                              :
                              :
KEVIN P. MALLORY,             :
              Defendant.      :
                              :
------------------------------:

PARTIAL TRANSCRIPT
(Jury Instruction Issues)

June 7, 2018

Before:   T.S. Ellis, III, USDC Judge

And a Jury

APPEARANCES:

FOR THE GOVERNMENT:

        UNITED STATES ATTORNEY'S OFFICE
        John T. Gibbs, Esquire
        Colleen E. Garcia, Esquire
        Jennifer K. Gellie, Esquire
        US Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314

FOR THE DEFENDANT:

        OFFICE OF THE FEDERAL PUBLIC DEFENDER
        Geremy C. Kamens, Esquire
        Todd Richman, Esquire
        1650 King St
        Suite 500
        Alexandria, VA 22314

OFFICIAL UNITED STATES COURT REPORTER:

        NORMAN B. LINNELL, RPR, FCRR
        United States District Court
        401 Courthouse Square
        Tenth Floor
        Alexandria, VA 22314
        703-549-4626

1            NOTE:  The June 7, 2018 portion of the case begins in

2    the absence of the jury as follows:

3    JURY OUT

4            THE CLERK:  The United States versus Kevin Patrick

5    Mallory, criminal case number 1:17-cr-154.

6            THE COURT:  All right.  The record will reflect that

7    counsel and the defendant are present and prepared to proceed.

8            This morning I received the Government's request for

9    reconsideration of rulings that I made last night.  The

10   essential ruling that I made last night is to add, as Mr.

11   Richman argued, the additional requirement, as he put it, to

12   require a finding of both objective and subjective intent.

13           I have gone back down memory lane because Mr.

14   Richman's inspiration for this came from an opinion I wrote in

15   2005; is that right, Mr. Richman?

16           MR. RICHMAN:  Yes, I think it was somewhere around

17   there.

18           THE COURT:  Anyway, I have reviewed that.  There are

19   some other things that have occurred to me.  So I am at work on

20   that right now.

21           I think, as I said yesterday, I thought you were

22   right, Mr. Richman.  I am not so sure now.  But what I am

23   certain of -- and I'm not sure the Government is right either.

24   But what I am certain of is that you have raised a significant

25   issue and that I need finally to come to grips with it and

4

1    resolve it.  Which I will I do in the next ten minutes because

2    I have done that.  I am putting it into form so that you can

3    see it.  And then I'll hear very briefly from you, because you

4    have all had an opportunity -- I think in the brief you filed

5    this morning, did you cite any cases that were not otherwise

6    cited?

7            MS. GELLIE:  Yes, sir, Your Honor.  I believe I added

8    a Fourth Circuit opinion in there.  Otherwise I do believe we

9    addressed Kiriakow --

10           THE COURT:  Which one did you add?

11           MS. GELLIE:  The Fourth Circuit opinion in Rosen, and

12   a second Rosen opinion that the defense did not raise

13   yesterday.

14           THE COURT:  Yes.  The Fourth Circuit opinion in Rosen

15   I think surprised me at the time because the case was gone.

16   Nonetheless, I think the parties wanted to say something about

17   it.  And I think the Fourth Circuit ultimately concluded it

18   didn't have a jurisdictional basis to resolve it.  They didn't.

19   But they said things, and I'm looking at those things

20   carefully.

21           And you know about that, don't you, Mr. Richman?  You

22   know about that opinion?

23           MR. RICHMAN:  We printed it out when we saw the

24   Government's cite to it this morning.

25           THE COURT:  All right.  So I am going to give you an

1  opportunity to review it.

2          What I am going to do is to come back as soon as I

3  have resolved this for my myself, show it to you, and then give

4  you a brief opportunity to tell me whether you agree.  It may

5  be that neither of you will agree.  It may be that both will

6  agree.

7          MR. KAMENS:  Your Honor, do you think it would assist

8  the Court at all to give a brief argument now?  Or no?

9          THE COURT:  Well, how can you argue if you don't know

10  what it is that I have resolved.  But if you just -- what

11  you're saying is, would it help me if I heard brief argument in

12  response to the Government's brief?

13          MR. KAMENS:  Yes.  Although I haven't reviewed their

14  brief in great detail, but I just wanted to speak briefly to

15  the statute.

16          THE COURT:  All right.  Which of you, you or Mr.

17  Richman?

18          MR. KAMENS:  Myself, Your Honor, if that's okay.

19          THE COURT:  Yes, I will hear from you.

20          MR. KAMENS:  Here is how 794 works, Your Honor.  It

21  requires the defendant to act with intention or reason to

22  believe that national defense information is to be used to the

23  injury of the United States, or to the advantage of a foreign

24  nation in the transmission.

25          Now, embedded within the definition of NDI is a

6

1   qualitative component, that there be objective facts showing

2   that it actually could harm the national defense.

3            What the Government is doing is taking that

4   qualitative component and importing it into the scienter

5   requirement and saying, the defendant can commit this offense

6   either if they have the intention or the purpose to harm the

7   United States or aid a foreign country, or if there are

8   objective facts such that they knew --

9            THE COURT:  I understood that.

10            MR. KAMENS:  All right.

11            THE COURT:  That is what was pointed out yesterday.

12            MR. KAMENS:  Understood.  Okay.  As long as the Court

13   saw that.

14            THE COURT:  Yes.

15            MR. KAMENS:  If we go down the Government's road,

16   they, essentially, take away the scienter requirement.  And it

17   is exactly that that the Supreme Court found to be essential to

18   the statute in Gorin.  And that's why they describe this as a

19   scienter requirement.

20            THE COURT:  Well, I think the point you just raised

21   is one I understood.

22            And it's valid, I think, Ms. Gellie, and I think my

23   solution accommodates that.  Do you want to respond briefly to

24   Mr. Kamens' views?

25            MS. GELLIE:  Just briefly, Your Honor.  Having looked

1    back at <u>Gorin</u>, the <u>Gorin</u> Court did not layer the "or" into an

2    "and," requiring a heightened burden on the Government.

3          And in fact, the <u>Gorin</u> Court wrote:  We find no

4    uncertainty in this statute which deprives a person of the

5    ability to predetermine whether a contemplated action is

6    criminal under the provisions of this law.  The obvious

7    eliminating words in the statute are those requiring intent or

8    reason to believe.

9          So I just disagree with the interpretation of <u>Gorin</u>

10   by the defense.

11         THE COURT:  Mr. Kamens, last opportunity.

12         MR. KAMENS:  Your Honor, it talks about bad faith.

13   It talks about subjective intent.

14         And so, what the Government here is doing is saying,

15   look, if some defendant takes a file from a government office

16   and hands it over to a foreign nation, they don't necessarily

17   have to have a bad faith purpose.  They could do it because

18   there is indications, objective indications that that

19   information itself could be harmful if it was given to a

20   foreign nation.  And that is problematic.  That definition is

21   already imbedded in the definition of NDI, and it takes away

22   the scienter requirement of the statute.

23         THE COURT:  You asked whether it would be helpful to

24   have additional argument.  The problem is I have to make the

25   decision.  My law clerks are out there doing the work now.

8

1          MR. KAMENS:  I understand.

2          THE COURT:  And it won't help unless you have in

3    front of you what I have resolved to be the solution to this

4    problem.

5          MR. KAMENS:  Understood, Your Honor.

6          THE COURT:  So I am going to go do that now.

7          I want the jury informed that it is going to be a bit

8    longer.  I can't predict how long.  But I ask that they be

9    patient.

10          Court stands in recess.

11          NOTE:  At this point a recess is taken; at the

12    conclusion of which the case continues in the absence of the

13    jury as follow:

14    JURY OUT

15          THE COURT:  All right.  The question before the Court

16    is raised in the context of the appropriate instruction to

17    define the mental state required to prove guilt of the offenses

18    charged in Counts 1, 2, and 3.  Because it has to be the same

19    for all three.

20          I'm persuaded, after having reviewed the authorities

21    cited, that would include certainly Rosen, certainly the Fourth

22    Circuit's view of Rosen, certainly Morison, and the Truong Dinh

23    Hung case, and I think there were one or two others, and what

24    those authorities and the parties arguments persuade me of is

25    that in committing the offenses charged in Counts 1, 2, and 3,

1  the defendant must not only have reason to believe that the

2  information relating to the national defense would be used to

3  harm the United States or help a foreign government, the

4  defendant must also have acted willfully.  That is, with a

5  specific intent to disregard or violate the law.

6          I think that is very clear.  And I think adding that

7  or making that clear avoids sweeping within the ambit of the

8  statute conduct that might not be what we would call guilty

9  conduct.  It must be willfully.

10          Now, the instructions as I currently have them --

11  and, here, let me pass out the copies of the instructions as

12  they now stand given my ruling.  And let me tell you how my

13  ruling is manifested in these instructions.

14          But in doing so, Mr. Kamens, you need to pay

15  attention to what I say, and I will call your specific

16  attention to pages.  The page numbers have changed, Mr. Kamens.

17  All right.

18          First of all, when I list the elements of Counts 1,

19  2, and 3, every one of those has an element in which it is

20  stated that Kevin Patrick Mallory acted willfully.

21          Now, I believe that's in all three.  But you can

22  check it.  It should be.

23          Then when we get to the next instruction on reason to

24  believe, I have made -- this is essentially standard.  This is

25  right out of the statute.  And it says that he has reason to

1   believe if -- and then I define it.  And it's in the -- it's in

2   the disjunctive there because it's in the disjunctive in the

3   statute.

4          But, don't lose hope, Mr. Kamens, but if you turn to

5   the next page, it then says:  I also told you that the

6   Government must also prove that the defendant acted willfully

7   in communicating, delivering, or transmitting information

8   relating to the national defense.  And then I define

9   "willfully."  I do not define "willfully" at the very end.  I

10  define it here.  And so, it makes clear that it's part -- as I

11  did, it's an element of the offense, willfulness.

12         And, therefore, I think I have adequately taken care

13  of the same concern that worried me in Rosen.  This whole issue

14  would have been better treated at the threshold rather than

15  here.  But I think that I now have adequately taken it into

16  account.

17         Now, I don't repeat it.  I don't repeat it.  For

18  example, when I get to Count 1, I say:  In order to sustain its

19  burden of proof under Count 1 of the indictment, the

20  conspiracy.

21         And then I go on to say:  The Government must prove

22  that the defendant acted with the same intent that I instructed

23  you is required to commit the offense of gathering or

24  delivering national defense information to a foreign

25  government.

1        Yes, Mr. Kamens.

2        MR. KAMENS:  I am sorry, are you finished with the

3  adjustments, or --

4        THE COURT:  Yes.

5        MR. KAMENS:  All right.

6        THE COURT:  All right.

7        MR. KAMENS:  Your Honor, we object.  The Court has

8  taken the word "willfully," which is not in 794, it's in 793,

9  and it has expanded the specific intent element from 794.

10        So what the Court has said is, as long as the

11  defendant acted --

12        THE COURT:  That should please you.

13        MR. KAMENS:  No, Your Honor, because the specific

14  intent in 794 is a higher burden than simply willfully.  To act

15  willfully means to act in disregard of the law, any law,

16  including, for example, mishandling.

17        But 794 requires more.  It requires that the

18  defendant act, communicate the information with the intent or

19  reason to believe that that information is to be used to harm

20  the United States or help China.

21        That's not a general willful disregard of the law.

22  That is a specific intent.  And so, what the Court has done is

23  it has expanded a specific intent requirement that is very much

24  more narrow and higher in 794.

25        In Truong Dinh, the Court mentioned that case, the

1   Court said specifically -- if I can find it.  It said that the

2   defendant must act, under 794(a), the prosecution must prove

3   that the defendant acted "with intent or reason to believe that

4   transmission of the information will injure the United States

5   or aid a foreign nation."

6            THE COURT:  I see.  All right.  I understand that.

7            MR. KAMENS:  The difference, if I could just finish

8   with this, the difference between 793 and 794, primarily, is

9   that the intention or reason to believe in 794 is before the

10  act.  So the defendant has to act with that intent.

11           Under 793, it's a little different.  The defendant

12  can simply transmit the information while also holding

13  objective facts that suggest the information could harm the

14  national defense.

15           THE COURT:  All right.  I understand.

16           MR. KAMENS:  So that is the specific intent in 794 is

17  before, and describes and modifies how the defendant acts.

18           THE COURT:  All right.

19           MR. KAMENS:  And that's why it is much more

20  significant.

21           THE COURT:  Ms. Gellie.

22           MS. GELLIE:  Your Honor, your instructions as to each

23  of the counts does have the language "acted with intent or

24  reason to believe," which I think covers that the defendant in

25  doing the act has to have an understanding of what the effect

1    of the act is going to be.

2            In looking at your willful instruction, the Court

3    does then specify what specific intent means.  And the Court

4    does say:  To establish that specific intent, the Government

5    must prove that the defendant knowingly did an act which the

6    law forbids.  Which I do think covers the knowingly aspect of

7    what Mr. Kamens just raised.

8            THE COURT:  Yes.  And I prefaced "willfully" by

9    saying:  Have acted willfully in communicating, delivering, or

10   transmitting information related to the national defense.

11           Why doesn't that answer your problem, Mr. Kamens?

12           MR. KAMENS:  Because if they act willfully in

13   communicating the NDI -- they could do it by, for example, as

14   the evidence has shown in this case, by disregarding the

15   restrictions on possession of classified information.

16           So the difference here is 794 requires something

17   more, that the transmission be done with intent or reason to

18   believe that that information will be used to harm the United

19   States or benefit China.  That is different.

20           THE COURT:  Well, suppose where it says:  With the

21   specific intent to do something that the law forbids, in this

22   case, harming the United States or aiding China?

23           MR. KAMENS:  I think that would accomplish it, but I

24   think that's much clearer and more simple in the Court's

25   previous instruction where it says, essentially, the language

1    from Truong Dinh:  The Government must also prove the defendant

2    knew facts from which he concluded or reasonably should have

3    concluded the information was to be used, but also the

4    Government must prove the defendant acted with the purpose

5    either to harm the United States or to aid a foreign nation.

6         That is the specific intent required by 794.

7         THE COURT:  I had that in the previous reason to

8    believe instruction.

9         MR. KAMENS:  Correct.  That is the one that the Court

10   ruled on yesterday, is the one that I believe the parties

11   prepared the closing arguments today for.  Certainly I did.

12        THE COURT:  I'm not worried about whether you are

13   prepared or not.  That's your problem.

14        MR. KAMENS:  Understood.  But at the same time, it is

15   an accurate reflection of the law.

16        The Government quoted Gorin, but didn't speak to the

17   sentence immediately after --

18        THE COURT:  I find Gorin to be unhelpful, frankly.

19        MR. KAMENS:  All right.  I will move on from --

20        THE COURT:  Totally unhelpful.

21        MR. KAMENS:  I will move on from Gorin.

22        THE COURT:  Typical Supreme Court, they don't address

23   it specifically, and then they import a term that isn't in the

24   statute, isn't there at all.  And I think it's imported for the

25   purpose of making the writer, whoever it was, feel good about

1    it, and the people who signed on.  The words imported are "bad

2    faith."

3              All right, Ms. Gellie --

4              MR. KAMENS:  Can I just add one sentence from Truong

5    Dinh then, if I could?

6              THE COURT:  Yes.

7              MR. KAMENS:  So instead of -- setting Gorin aside,

8    what the Fourth Circuit said in Truong Dinh when they were

9    construing this very statute, that the prosecution has to prove

10   the intent or reason to believe --

11             THE COURT:  Yes, that's what I said at the outset.

12             MR. KAMENS:  But then it said --

13             THE COURT:  All you're saying is what I've done

14   doesn't do that.

15             MR. KAMENS:  Yes, but I wanted --

16             THE COURT:  The short answer is you ought to be

17   saying, look, what you said at the outset when I said that the

18   Government must prove not only that there was reason to believe

19   that the information relating to the national defense could

20   harm the United States or help a foreign government, the

21   defendant must also have acted willfully with the specific

22   intent.

23             And what you're saying is that that doesn't make --

24   that is true, but it has to be that he acted willfully in terms

25   of having an intent to harm or to help the Chinese Government.

1          MR. KAMENS:  Yes, Your Honor.

2          THE COURT:  All right.  Last chance, Ms. Gellie.

3          MS. GELLIE:  Thank you, Your Honor.

4          The Government would just ask, if you are going to

5     add that language in this case, "with the intent to harm or

6     benefit," you also put back in "or with reason to believe the

7     information would harm or benefit."

8          THE COURT:  But that erases willfulness.

9          MS. GELLIE:  Your Honor, he still has to knowingly

10     decide to pass this information knowing that it relates to the

11     national defense, that it has the potential to damage the

12     United States, and that it's closely held.  Separate

13     instructions you are giving to the jury.

14          THE COURT:  All right.

15          MS. GELLIE:  And that is a separate prong under which

16     the Government may proceed based on the statute in proving the

17     intent element, Your Honor.

18          THE COURT:  Is there any objection to using the

19     Government's proposed jury verdict form?

20          MR. KAMENS:  I'm sorry, I haven't looked at it yet.

21     And I will do that --

22          THE COURT:  Look at it right now and tell me.

23          MR. KAMENS:  I will.

24          THE COURT:  There is no tomorrow, Mr. Kamens.

25          MR. KAMENS:  Understood.

1          THE COURT:  All right, I will take a brief recess.

2          Now, when I come back in, I'm going to ask that

3   question again, and I want to know whether there is any

4   objection.  Cover that objection with Ms. Gellie.  See if you

5   can reach an agreement.  And following that, I want to tell you

6   what I am going to do finally, without any further argument,

7   and we are going to have the jury brought in and we will start

8   with your closing arguments.

9          MR. KAMENS:  Thank you, Your Honor.

10          THE COURT:  To the extent you need to modify your

11   closing arguments to adjust to that, is your problem.

12          NOTE:  At this point a recess is taken; at the

13   conclusion of which the case continues in the absence of the

14   jury as follow:

15   JURY OUT

16          THE COURT:  All right.  Mr. Kamens, any objection to

17   the form of the verdict?

18          MR. KAMENS:  Your Honor, we have jointly agreed

19   simply to switch the guilty and not guilty on the form.  But

20   other than that, I think the parties are in agreement.

21          THE COURT:  All right.

22          MR. KAMENS:  But we both agreed on that.

23          THE COURT:  That's fine, I think that's an

24   appropriate change.

25          Now, supply that for me -- for the Court, Ms. Gellie.

1          MS. GELLIE:  Yes, Your Honor.

2          THE COURT:  I take it you have the means to do so?

3          MS. GELLIE:  We do, Your Honor.

4          THE COURT:  All right.  Now, before the Court was

5    this dispute about the latest form of instructions I've given

6    to you.

7          Let me be clear about this.  I'm going to give the

8    instructions as they appear in the latest package that I gave

9    you, to which Mr. Kamens objected.  And his objection is that

10   he contends that to convict the defendant under this statute,

11   794, the Government must prove that defendant acted with the

12   purpose to aid a foreign government or harm the United States.

13         I agree, the statute certainly prohibits this

14   conduct, but it also prohibits the defendant from willfully

15   transmitting information to a foreign government with reason to

16   believe that the information was to be used to aid a foreign

17   government or to injure the United States.

18         The problem with the argument that the defendant

19   urges is that the statute is stated in the injunctive -- the

20   disjunctive.  I beg your pardon.  In the disjunctive.  And this

21   particular argument that was made reads out of the statute the

22   disjunctive, the "or," and puts a period there.  I'm not

23   permitted to do that.

24         That's why I went back and looked at Morison.  And

25   indeed, the instruction that I'm giving on new page 36A is the

1    instruction that is I think approved in Morison.

2            So that's what I am going to do.  I will still -- of

3    course, every one of the three offenses, the elements include

4    willfulness.  And willfulness is defined.

5            The problem I see -- and we're done with argument.

6    If I'm wrong, in some positivist sense, that is to say, someone

7    with the power to say I'm wrong, and not necessarily that I am

8    wrong, but if I'm wrong, of course, it can be remedied.

9            But if the statute were to be construed as the

10   defense argues, then a person could take secrets of the United

11   States, give those to a foreign government, but do so only

12   because the person wanted money.  Doesn't care whether it hurts

13   the United States.  Doesn't care whether it helps a foreign

14   nation.  Has no interest in that at all.  Just has interest in

15   money.

16           That conduct is punished by this statute because

17   there is an objective part of this statute.  And that, I think,

18   is the overlay that I finally left or made clear.

19           Now, I don't really think this should require, Mr.

20   Gibbs, that you need any more time to prepare your closing

21   argument.

22           MR. GIBBS:  That's correct, Judge.

23           THE COURT:  Am I right?  I beg your pardon?

24           MR. GIBBS:  That is correct, Judge.

25           THE COURT:  So you are ready to go?

1          MR. GIBBS:  I am ready to go.

2          THE COURT:  Mr. Kamens.

3          MR. KAMENS:  Yes, Your Honor.

4          THE COURT:  I have your objection.  You have my

5   ruling.  Are you ready to make your closing argument?

6          MR. KAMENS:  I am, Your Honor.  I want to mention

7   what I mentioned yesterday, that we do have some handouts,

8   demonstratives, at the time that we give our argument.

9          THE COURT:  Yes.  And you have seen those?

10         MR. KAMENS:  Yes, Your Honor.  The Government.

11         THE COURT:  I know you have.

12         You have seen those, Mr. Gibbs?

13         MR. GIBBS:  We have, Your Honor.

14         THE COURT:  No objection to those?

15         MR. GIBBS:  No objection.

16         THE COURT:  Now, we'll hand those out when you wish.

17   And we will collect them once your argument is over.

18         MR. KAMENS:  Understood.  And we also have to set up

19   a billboard.

20         THE COURT:  Why do you have to do both?

21         MR. KAMENS:  Well, we -- very well, Your Honor.  We

22   will simply hand them out.

23         THE COURT:  Alternatively, what you can do is use the

24   ELMO.  But let's not -- it doesn't need to be theater.

25         Now, do you have the same sort of thing?

1            MR. GIBBS:  Your Honor, we have a few exhibits that

2   are in evidence that we will display during my initial closing.

3            THE COURT:  You will display those on the screen?

4            MR. GIBBS:  Correct.

5            THE COURT:  All right.  But you don't have something,

6   a demonstrative that you want to hand out?

7            MR. GIBBS:  No, Judge.

8            THE COURT:  All right.  Then I will repeat to the

9   jury that it is a demonstrative, it's not evidence, and you

10  won't have it in the jury room, but you may consider it.

11           All right, let's bring the jury in.

12                    *          *          *

13           NOTE:  The partial transcript dealing with jury

14  instruction issues is concluded.

15  --------------------------------------------------
                  PARTIAL TRANSCRIPT CONCLUDED

16

17

18

19

20           I certify that the foregoing is a true and

21      accurate transcription of my stenographic notes.

22

23
                      /s/  Norman B. Linnell
24                    Norman B. Linnell, RPR, CM, VCE, FCRR

25