IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 17-CR-154 |
| ) | |
| v. ) | |
| ) | Hon. T. S. Ellis, III |
| ) | |
| KEVIN PATRICK MALLORY, ) | |
|     Defendant. ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO RECONSIDER JUDGMENTS OF ACQUITTAL WITH RESPECT TO COUNTS TWO AND THREE**

The government presents two grounds in its Motion to Reconsider this Court's July 26, 2018, Memorandum Opinion that are equally without merit. First, the government contends that it established venue at trial pursuant to 18 U.S.C. § 3238, which applies to "Offenses Not Committed in Any District." This argument is based on the false premise that § 3238 can establish venue for any offense that was committed partially outside the United States. Second, the government repeats the argument that Mr. Mallory engaged in a substantial step in this District for the purpose of attempting to transmit national defense information to a foreign citizen, a claim that not only ignores settled law defining what constitutes a "substantial step," but also was fully addressed and rejected by this Court's July 26, 2018, Opinion. Finally, the government fails to recite or satisfy the basic legal standard

governing motions for reconsideration. For these reasons, the government's motion should be denied.

## I. The Government's Arguments Fail to Meet the Legal Standard Applied to Motions to Reconsider

Noting that motions to reconsider are permissible in criminal cases, the government fails to mention the legal standard applied to such motions. Instead, it seeks a de novo reconsideration of the Court's decision, as well as a do-over of its response to the Defendant's Rule 29 Motion based on the government's failure to establish constitutionally sufficient proof of venue as to Counts 2 and 3. The Court should deny the motion because it "does not set forth the appropriate standard governing a motion for reconsideration, nor has [it] argued that [it] has satisfied any such standard." *United States v. Clenney*, No. 1:09CR135, 2009 WL 10677501, at *3 n.1 (E.D. Va. July 15, 2009) (Ellis, J.).

Although the Federal Rules of Criminal Procedure do not specifically address motions to reconsider, courts in criminal cases apply the standard derived from the Federal Rules of Civil Procedure. *See id.* at *2; *United States v. Young*, 260 F. Supp. 3d 530, 555 (E.D. Va. 2017) ("There is no provision in the Federal Rules of Criminal Procedure governing motions for reconsideration, therefore courts are guided by analogy to the standards established by the civil rules."); *see also United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (noting that motions to reconsider in criminal prosecutions should be "treated just like motions in civil suits").

Under that standard, reconsideration is an "extraordinary remedy which should be used sparingly." *Pacific Ins. v. American Nat. Fire Ins.*, 148 F.3d 396, 403

(4th Cir. 1998) (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)); *accord Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Specifically, motions for reconsideration "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)); *accord Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005); *Clenney*, 2009 WL 10677501, at *2.[1]

Importantly, "[a] party's mere disagreement with the court's ruling does not warrant a [motion to reconsider], and such motions should not be used 'to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.'" *United States v. Danielczyk*, 917 F. Supp. 2d 573, 576 (E.D. Va. 2013) (quoting *Pac. Ins.*, 148 F.3d at 403). Moreover, a party should not use a reconsideration motion simply "to ask the Court to rethink what the Court had already thought through." *Above the Belt, Inc.*, 99 F.R.D. at 101; *see also Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have

---

[1] In this context, the term "manifest injustice" refers to extraordinary circumstances such as when a ruling misapprehends a party's argument or risks injury to innocent third parties. *See Dahl v. Aerospace Employees' Ret. Plan of the Aerospace Corp.*, 2015 WL 6604799, at *6 (E.D. Va. Oct. 29, 2015) (Cacheris, J.) (finding motion failed the "high hurdle" imposed by "manifest injustice" standard because Court did not misapprehend party's argument); *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 393 F. Supp. 2d 15, 17 (D.D.C. 2005) (finding harm to innocent third parties warrants reconsideration based on manifest injustice).

once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000) ("Parties therefore may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind."); *United States v. D'Armond*, 80 F. Supp.2d 1157, 1170 (D. Kan. 1999) ("[A] motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed").

The government's motion to reconsider flatly fails to provide a valid basis for reconsideration of the Court's Memorandum Opinion. It does not cite any intervening change in law. It does not present facts or arguments that were not available at the time of the Court's prior decision. Nor does it establish that the Court's Opinion violated established legal principles or resulted in manifest injustice. Rather, the government has simply repeated familiar arguments along with a new theory of venue under 18 U.S.C. § 3238, neither of which warrant reconsideration of this Court's Memorandum Opinion.

## II. Because 18 U.S.C. § 3238 Applies Only to Charges in Which the Offense Conduct Is Essentially Foreign, It Does Not Authorize Venue For Count 2 of the Indictment.

In its motion for reconsideration, the government asserts for the first time that venue for Count 2 was established pursuant to 18 U.S.C. § 3238 because some of the offense conduct occurred overseas, and Mr. Mallory was first arrested in this

4

District. Gov't Mot. 4-5. In other words, under the government's view, as long as some offense conduct occurs overseas with respect to any alleged offense, venue is proper under § 3238 in the district of arrest regardless of whether the offense was predominantly committed within the United States. The government is wrong because § 3238: (1) does not eliminate the Constitution's requirement that offenses that substantially occur within the United States must be tried in the district of commission, and (2) applies only to offenses that are "essentially foreign" in which no "crucial activity" occurs within any district, and any conduct in the United States is "slight and tangential." *United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 952 (4th Cir. 1986).

The title of 18 U.S.C. § 3238 is "Offenses Not Committed in any District," and the statute was designed to implement Article III, § 2's directive that "when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const., art. III § 2; *Levy Auto Parts of Canada*, 787 F.2d at 949-50. As "the history and text of § 3238 [] make clear, . . . the statute focuses on offense conduct outside of the United States." *United States v. Miller*, 808 F.3d 607, 619 (2d Cir. 2015). Moreover, § 3238 does not abrogate the constitutional requirement that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const., art. III § 2; *accord* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). As such, offenses that substantially occurred within the United

5

States must be tried in the district where they were committed, even if some offense conduct occurred overseas.

Accordingly, 18 U.S.C. § 3238 is inapplicable where "an essential conduct element under [the applicable statute] … is alleged to have taken place in districts of the United States." *United States v. Perlitz*, 728 F. Supp. 2d 46, 56-57 (D. Conn. 2010); *see also Levy Auto Parts*, 787 F.2d at 952 (noting that Section 3238 likely would not have applied if "crucial activity" had occurred in the District of Columbia or the Western District of Michigan). The Government does not dispute that such "crucial activity" occurred in the United States. Rather, through citations to out-of-circuit cases, the Government seeks to expand Section 3238's reach to include any offense in which "some portion of the criminal conduct may occur within the United States, with other conduct occurring abroad." Gov't Mot. Reconsider at 5. Neither the statute nor the case law supports such a broad construction.

As an initial matter, neither the Fourth Circuit nor the cases cited by the Government permit the broad holding the Government seeks. Indeed, the out-of-district cases cited by the government hold only that offenses that predominantly occur on the high seas or in another country fall within the ambit of § 3238 despite the existence of relatively minor offense conduct that occurs within the United States. *See United States v. Williams*, 589 F.2d 210, 211 (5th Cir. 1979) (affirming venue under § 3238 as to charges arising from U.S. Coast Guard seizure of marijuana on vessel on the high seas even though one overt act was committed in New York); *United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir. 1979) (affirming

6

§ 3238's application to charges resulting from seizure of marijuana on vessel on the high seas in the Gulf of Mexico); *United States v. Jensen*, 93 F.3d 667, 670 (9th Cir. 1996) (holding information sufficiently alleged venue for operating unseaworthy vessel on high seas); *United States v. Bin Laden*, 91 F. Supp. 2d 600, 614 (S.D.N.Y. 2000) (charges arising from bombing of U.S. embassies in Kenya and Tanzania "all allege conduct that occurred exclusively outside the jurisdiction of any particular state").[2] The government fails to cite a single case in which § 3238 was applied to charged conduct that substantially occurred within the United States.

More importantly, the law in this Circuit is plain that § 3238 applies only to offenses that predominantly occur outside of any United States district. *See Levy Auto Parts*, 787 F.2d at 952 (holding that Section § 3238 applied because "the aborted conspiracy was essentially foreign" and noting that this was "not a case of a conspiracy formed abroad but producing substantial activity in furtherance of its purpose in the United States"); *see also Miller*, 808 F.3d at 620 ("Because the underlying offense occurred in its essence abroad—that is, was 'committed … out of the jurisdiction of any particular State or district' … § 3238 may be used to establish venue in the district of arrest even though certain offense conduct occurred in the United States."); *United States v. Pendleton*, 658 F.3d 299, 305 (3d Cir. 2011) ("Because Pendleton's criminal conduct was 'essentially foreign,' … the District Court did not err in applying § 3238 to hold that venue was proper in the district of arrest."); *United States v. Torres-Garcia*, No. 05-267(RMC), 2007 WL

---

[2] The cases cited by the government are contained in footnote 23 of the district court opinion in *Bin Laden*. 91 F. Supp. 2d 600, 613 n.23 (S.D.N.Y. 2000).

1207204, at *7 (D.D.C. Apr. 24, 2007) (characterizing *Levy Auto Parts* as upholding "venue under § 3238 where the alleged conspiracy was 'essentially foreign' and domestic overt acts were 'slight and tangential' to the charged conspiracy").

In sum, the case law establishes that the location of the "crucial activity" or the "'crux' of the defendant's offense" determines whether § 3238 applies. *See Levy Auto Parts*, 987 F.2d at 952; *Miller*, 808 F.3d at 620 (noting that "because the 'crux' of the defendant's offense—the illicit sexual conduct—was 'committed' outside of the jurisdiction of any state or district, the crime was 'essentially foreign' and § 3238 applied to set venue in the district of his arrest"). In other words, § 3238 applies only if the offense conduct is essentially foreign. *See, e.g., United States v. Kampiles,* 609 F.2d 1233, 1238 (7th Cir. 1979) (affirming venue under § 3238 in Northern District of Indiana where evidence showed defendant delivered spy satellite manual to Soviet agent in Greece and defendant was arrested in that district). As a result, if an offense was predominantly committed within the United States, then § 3238 cannot establish venue. *See Levy Auto Parts*, 987 F.2d at 952; *see also Perlitz*, 728 F. Supp. 2d at 57 ("Because Perlitz is alleged to have engaged in an essential conduct element within the jurisdiction of districts of the United States, § 3238 … is inapplicable.").

Moreover, the Fourth Circuit held in *Levy Auto Parts* that, "in construing [Section 3238], the higher authority of Article III, § 2 of the Constitution must be respected and observed." 987 F.2d at 950. Accordingly, if an offense predominantly occurred within a particular district in the United States, trial must be held in that

8

district. That is why the Fourth Circuit limited the reach of § 3238 to conduct that was "essentially foreign." *See id.* at 952. If the Court were to adopt the government's reading of § 3238, such that it permitted venue in the place of arrest even in cases where the offense conduct substantially occurred within the United States, the statute would conflict with the Constitution's requirement that trials occur in the district where the offense conduct occurred. The restriction of § 3238 to "essentially foreign" cases therefore is entirely consistent with the purpose and text of the statute, as well as the Constitution. *See id.* The government's construction of § 3238, on the other hand, is not.

## III. The Government's Arguments that It Established Venue Through Circumstantial Evidence Tied to Mr. Mallory's Residence and His Trip to a FedEx Store in this District Are Meritless

Repeating arguments rejected by the Court in its July 26, 2018, Memorandum Opinion, the government maintains that (1) circumstantial evidence proves that Mr. Mallory transmitted and attempted to transmit national defense information to a Chinese intelligence agent from his home within the Eastern District of Virginia; and (2) scanning documents at a Federal Express store within the Eastern District of Virginia constituted a "first crucial step" in the commission of Counts 2 and 3, and thus establish venue for purposes of 18 U.S.C. § 3237. Gov't Mot. Recons. at 6-23. Neither of these arguments is valid because, as this Court already ruled, the government failed to adduce evidence as to where in the United States *the essential conduct elements* of Counts 2 and 3 took place.

9

### A. The Court Properly Rejected the Government's Speculation Regarding the Location of Transmission

As the Court recounted in its July 26, 2018, Memorandum Opinion, "venue is proper only in a district in which [an] *essential conduct element* of the offense took place." *United States v. Mallory*, No. 1:17-CR-154, 2018 WL 3587718, at *8 (E.D. Va. July 26, 2018) (emphasis added); *accord United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999) (noting that venue inquiry focuses on "conduct elements" of the statute); *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000) (explaining that venue is limited "in a criminal trial to the place of the essential conduct elements of the offense" ). And in the context of 18 U.S.C. § 794, the "essential conduct elements" for purposes of venue are clear. As the Fourth Circuit explained with respect to an adjacent statute with identical verbs, 18 U.S.C. § 793, the "essential conduct elements—'communicates, delivers, transmits'—do not necessarily encompass every movement of national defense information. Instead, the terms sanction movement of such information as part of a process designed to give it to another—in this case to 'any person not entitled to receive it.'" *United States v. Sterling*, 860 F.3d 233, 243 (4th Cir. 2017).

"Preparatory acts," on the other hand, "such as planning to commit the offense, cannot provide a basis for venue because the preparatory acts are not the essential conduct proscribed by the statute." *Mallory*, 2018 WL 3587718, at *8; *accord United States v. Villarini*, 238 F.3d 530, 532 (4th Cir. 2001) (holding that venue did not lie in Virginia for money laundering that occurred in Florida, notwithstanding "anterior criminal conduct" in which money was embezzled in

10

Virginia). This principle holds true even with respect to "anterior criminal conduct" that is a necessary prerequisite to the commission of the offense charged. *See United States v. Cabrales*, 524 U.S. 1, 7 (1998) (holding that venue for money laundering is determined by the location of the monetary transactions proscribed by the money laundering statute, not the "anterior criminal conduct that yielded the funds allegedly laundered").

Instead of focusing on the "essential conduct elements" of 18 U.S.C. § 794 as required by the legal standard governing the venue inquiry, the government repeats arguments that were specifically addressed and rejected by the Court's Memorandum Opinion. The government argues that the location of evidence "in the Defendant's home cannot be overemphasized," Gov't Mot. Recons. at 13, and repeats its argument that because transmissions occurred late at night "it would be reasonable to expect that [Mr. Mallory] would be home," *id.* at 8. Such speculation, as this Court found, is simply insufficient to establish proof that the essential conduct element at issue --- the transmission of information to a foreign national --- occurred within this district. *Mallory*, 2018 WL 3587718, at *9; *accord Sterling*, 860 F.3d at 243. Indeed, the Court noted that the Fourth Circuit rejected the argument in *Sterling* that the defendant's storage of NDI at his home established that the transmission proscribed by § 793 began there. *Mallory*, 2018 WL 3587718, at *9 (citing *Sterling*, 860 F.3d at 244). It also observed that in the absence of "cell tower or surveillance evidence, . . . [or] evidence about defendant's tendency to be at his

11

residence at any particular time," the government's arguments amount to nothing more than conjecture. *Id*.

The government also asserts two new arguments which are equally if not more speculative. First, the government asserts that Mr. Mallory's shoulder surgery, which occurred during the first week of May 2017, was "serious enough that he could not drive a car." Gov't Mot. Recons. at 8. Second, the government hypothesizes that Mr. Mallory would not leave the district to transmit national defense information because "criminals simply do not walk around unnecessarily carrying contraband." *Id.* at 11. Given that the government adduced no evidence regarding Mr. Mallory's ability to drive at the time of the alleged transmissions, presented no information as to the location of Mr. Mallory's surgery, and (as noted above) presented no surveillance or cell tower evidence, *Mallory*, 2018 WL 3587718, at *9, these arguments amount to rank speculation that cannot support a finding of venue as to the essential conduct elements. *Sterling*, 860 F.3d at 243 (rejecting government's speculation as to where transmission of information occurred). They are also foreclosed from consideration in a motion for reconsideration because they were equally available at the time the government responded to the Rule 29 Motion.

### B. The Court Properly Held that Scanning National Defense Information onto an SD Card Does Not Consitute an Attempt to Transmit Such Information to a Foreign National

The government also repeats its argument that "scanning the classified documents at issue to an SD card was a *necessary step* in the progression of steps Mallory took toward the attempted transmittal of NDI to Michael Yang," Gov't Mot.

12

Recons. at 21 (emphasis in orig.), and thus was sufficient to establish venue for purposes of Count 3 charging attempted transmission in violation of 18 U.S.C. § 794. The importance of Mr. Mallory's trip to the FedEx Store, according to the government, "cannot be overstated" in the context of the establishment of venue for Court 3. As the Court previously held, the government is wrong. *Mallory*, 2018 WL 3587718, at *9-10.

The Court explained in its Memorandum Opinion that "[a] substantial step is 'a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose.'" *Id.* at *9 (quoting *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012)). Importantly, however, a "substantial step" for purposes of attempt liability is not simply conduct that necessarily precedes the ultimate completion of an offense. What matters is whether the defendant engaged in a "substantial step towards the completion of the crime" charged. *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996). The crimes charged in Counts 2 and 3 were the transmission and attempted transmission of NDI to a foreign agent. As the Court held, "[t]he scanning of NDI documents and their placement on a particular storage device would not, on their own, violate §794(a)'s prohibition on attempted transmission of NDI, and the crime would not have been committed as of either of those actions." *Mallory*, 2018 WL 3587718, at *9. "Rather," the Court observed, "the crime of transmission of NDI would have been committed at the point defendant sent the transmissions had 'intervening circumstances' in the form of the failure of the send sequences not occurred." *Id.*

13

The Court's analysis was entirely grounded in basic principles of the law of venue, which requires courts to focus on the essential conduct elements of § 794, namely the transmission, delivery, or communication of NDI to a foreign national. *See United States v. Villarini*, 238 F.3d 530, 532 (4th Cir. 2001) (holding that venue did not lie in Virginia for money laundering that occurred in Florida, despite the fact that the money was embezzled in Virginia). "Anterior criminal conduct," even if it is necessary to the ultimate commission of the charged offense, thus does not establish venue if it constitues preparatory acts that precede the essential conduct elements of the charged offense. *See Cabrales*, 524 U.S. at 7 (holding that venue is limited by the terms of the money laundering statute at issue, and could not be based upon "the anterior criminal conduct" that produced the laundered funds).

For all of its emphasis upon the evidence of Mr. Mallory's scanning of documents at the FedEx Store, none of the scanning evidence establishes an attempt to commit the essential conduct elements of § 794. As the Court held, "[i]t was at the point of the *attempt to transmit the NDI* that the crime of attempt was complete, not at a time before then when defendant was gathering and preparing the NDI for transmission." *Mallory*, 2018 WL 3587718, at *9 (emphasis added). Conduct that is "merely prepatory," this Court explained, is "not properly considered substantial steps in the *attempted transmission* of NDI." *Id.* (emphasis added). In sum, the government's "first crucial step" argument fails because the scanning of documents is simply prepatory and does not involve the "essential

14

conduct elements" of § 794 — no matter how essential to the ultimate commission of the charged offense it may have been.

The Fourth Circuit's opinions in *Sterling* and *United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987), cited by the government, confirm the soundness of the Court's ruling in this case. In *Sterling*, the Fourth Circuit upheld the defendant's challenge to venue as to the actual delivery of NDI to a reporter in violation of 18 U.S.C. § 793(e), but rejected his venue challenge to counts that charged attempted communication of NDI through publication in a newspaper. The court noted that for the attempt counts, "venue [was] proper anywhere Sterling committed a substantial step toward communicating, delivering, and transmitting information about the Program to the general public." 860 F.3d at 242. Importantly, the Fourth Circuit did not suggest that venue was proper for the attempt counts because Mr. Sterling had stored information at his house in the Eastern District of Virginia before delivering it to a reporter for publication. Instead, the court determined that venue for the attempt counts was properly based on "steps Sterling took while in the district," namely phone calls in which he "tried to convince [the reporter] to publish" information he had had previously sent. *Id*. Because evidence was presented at trial that showed the defendant's efforts to convince the reporter to publish the information occurred in this District, the Fourth Circuit concluded that a "substantial step" connected to the essential conduct elements of § 793 occurred here.

In other words, but for "intervening circumstances" beyond the defendant's control in *Sterling*, evidence established that the defendant had taken actions within this District to have the NDI communicated to the public through publication in a newspaper — the essential conduct of the particular attempt charges in that case. Such evidence is entirely lacking in this case because the government failed to adduce evidence that Mr. Mallory attempted to transmit NDI to Michael Yang while in this District.

*United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987), likewise does not help the government. In *Pelton*, the Fourth Circuit found that the defendant committed attempted espionage by travelling to Vienna and walking in a park for three days for the purpose of meeting a foreign agent. 835 F.2d at 1074. As the court noted, "Pelton in fact took every possible step to contact the Soviets, and was prevented from committing the crime only by fortuity." *Id.* Again, such conduct constitutes a "substantial step" for purposes of attempt liability because it involves efforts to engage in the essential conduct elements proscribed by § 794 –- communication, delivery, or transmission. Mr. Mallory's conduct at the FedEx Store, by contrast, simply does not amount to an effort to engage in those same essential conduct elements, and thus does not constitute a "substantial step" for purposes of attempted espionage.

In conclusion, the government has ignored prevailing legal standards and largely repeated arguments previously rejected. For the foregoing reasons, the

16

Court should deny the government's Motion to Reconsider this Court's July 26, 2018, Memorandum Opinion.

        Respectfully submitted,

        KEVIN PATRICK MALLORY
        Defendant

By:   /s/ Geremy C. Kamens
       Geremy C. Kamens
       Federal Public Defender
       Todd Richman
       Assistant Federal Public Defender
       Office of the Federal Public Defender (Alexandria)
       1650 King St, Suite 500
       Alexandria, VA 22314
       T: 703-600-0848
       F: 703-600-0880
       Geremy_Kamens@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2018, I filed the foregoing document electronically through the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Colleen E. Garcia
    Jennifer Gellie
    John Gibbs
    Assistant United States Attorneys
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Telephone: (703) 299-3700
    Facsimile: (703) 299-3980
    John.Gibbs@usdoj.gov
    Collen.E.Garcia@usdoj.gov

A courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of this filing.

<u>/s/ Geremy C. Kamens</u>
Geremy C. Kamens
