# EXHIBIT A

14 Dec 10
20-05165
= file
waiting on file from DAC-4 - when receiv will forward to ADJ
K.

**DEFENSE INTELLIGENCE AGENCY**
**OFFICE OF THE INSPECTOR GENERAL**
**WASHINGTON, DC 20340-5100**

# REPORT OF INVESTIGATON

## CASE 2010-006206-OI

GOVERNMENT EXHIBIT
1-15A
1:17-cr-154

[redacted]

UNITED STATES GOVERNMENT

# memorandum

DATE: 22 November 2010

U-10-0452/IG

REPLY TO ATTN OF: IG

SUBJECT: [redacted] Report of Investigation, Case 2010-006206-OI

TO: DX (BG Carr)

1. [redacted] The Office of the Inspector General (IG), Defense Intelligence Agency (DIA), Washington, DC, was notified that Mr. Kevin P. Mallory, [redacted] DIA, (formerly designated as the [redacted]), may have disclosed classified information to unauthorized person(s). The final report of investigation is enclosed.

2. [redacted] The allegation of divulging of classified information is substantiated. The investigation determined that Mr. Mallory violated Department of Defense 5200.1-R, "Information Security Program," January 1997, and DIA Manual 50-8, "DIA Personnel Security Program," June 1995, when he divulged classified information to Absolute Business Solutions Corporation (ABSC), Reston, VA. While on administrative leave from DIA, Mr. Mallory, who had obtained employment with ABSC, informed them of an opportunity to collect intelligence [redacted] through [redacted] with unfettered access to [redacted]. In March 2010, while Mr. Mallory was on administrative leave, DIA, along with the [redacted] implemented an operation to utilize the aforementioned [redacted] target [redacted]. Although Mr. Mallory may have spoken in generalities about concepts he developed for DIA, the information was such that [redacted] was able to determine from ABSC's proposal that ABSC management was describing an active [redacted] operation.

3. [redacted] During our interview, Mr. Mallory denied divulging classified information to ABSC. Mr. Mallory admitted he was employed by ABSC while on administrative leave, but stated he only provided general information regarding ventures ABSC could explore in the intelligence field to maximize their business opportunities. He further stated that ABSC embellished some of the business conversations they had in order to entice CIA into doing business with his company.

[redacted]

**INVESTIGATIVE DATA**
**TO BE TREATED IN A CONFIDENTIAL MANNER**
**USE IS RESTRICTED**

[redacted]

[REDACTED]

4. [REDACTED] Further, the investigation determined that there was sufficient evidence to believe Mr. Mallory violated DIA Instruction (DIAI) 1426.001, "Employee/Management Relations and Conduct," 28 September 2001, when he failed to report to his supervisor that he obtained outside employment. DIAI 1426.001, paragraph 3.9.8 states "Report all outside employment to the immediate supervisor for review for possible conflict of interest…" Mr. Mallory also acknowledged he had a duty to advise his immediate supervisor at DIA that he had obtained outside employment but chose to tell no one.

5. [REDACTED] Also, the investigation determined Mr. Mallory violated DoD 5240.1-R, "Procedures Governing the Activities of DoD Intelligence Components that Affect United States Persons," 17 December 1988, when he discussed the Directorate for Human Intelligence (DH), DX, planning process, functional plans and support with ABSC. Mr. Mallory exceeded his authority and did not obtain proper authorization, nor did he determine if ABSC had a legitimate need to know to the information.

6. [REDACTED] We request that DX report the results of any actions taken or reasons why action was not taken regarding Mr. Mallory by 17 January 2011. Proposed administrative or disciplinary action should be coordinated with the Directorate for Human Capital and the Office of General Counsel. The IG point of contact for this matter is Special Agent [REDACTED]

John A. Carey
Inspector General

1 Encl a/s

cc:
DR (LTG Burgess) w/o exhibits
DD (Mr. Shedd) w/o exhibits
CS (Ms. Houy) w/o exhibits
GC (Mr. Peirce) w/o exhibits
DAC ([REDACTED]) w/o exhibits
HCH-1 ([REDACTED])
DAC-3 ([REDACTED])
DX-SD ([REDACTED])

[REDACTED]

[redacted]

# (U) REPORT OF INVESTIGATION – FINAL – 2010-006206-OI

22 November 2010

1. [redacted] **Dates and Locations of Occurrence.**

   a. [redacted] Between 4 January and 31 May 2010. Absolute Business Solutions Corporation (ABSC). 11260 Roger Bacon Drive. Reston. VA.

   b. [redacted] Between 1 and 21 April 2010: [redacted] Langley, VA.

3. [redacted] **Date Reported.** 28 June 2010.

3. [redacted] **Investigated By.** Special Agent (SA) [redacted].

4. [redacted] **Subject.** Mallory. Kevin Patrick; IA-4: XXX-XX-9429: 8 April 1957; Kansas City. MO: male: [redacted], Defense Intelligence Agency (DIA). Washington. DC (previously designated as the [redacted]

   a. [redacted] Violation of Department of Defense (DoD) 5200.1-R. "Information Security Program." January 1997 (substantiated).

   b. [redacted] Violation of DIA Manual (DIAM) 50-8. "DIA Personnel Security Program." June 1995 (substantiated).

   c. [redacted] Violation of DIA Instruction (DIAI) 1426.001. "Employee/Management Relations and Conduct." 28 September 2001 (substantiated).

   d. [redacted] Violation of DoD 5240.1-R. "Procedures Governing the Activities of DoD Intelligence Components that Affect United States Persons." 17 December 1988 (substantiated).

5. [redacted] **Victim.** U.S. Government (DIA. Washington. DC): violation of DoD 5200.1-R; DIAM 50-8. DIAI 1426.001. and DoD 5240.1-R.

6. [redacted] **Allegation.** Mr. Mallory divulged classified information about [redacted] sources to unauthorized person(s).

[redacted]

THIS REPORT SHALL BE MADE AVAILABLE ONLY TO THOSE OFFICIALS WHOSE DIRECT RESPONSIBILITIES INCLUDE OVERSIGHT OF THE ORGANIZATIONS OR PERSONNEL DISCUSSED HEREIN. THIS REPORT, OR PORTIONS THEREOF, MAY NOT BE REPRODUCED WITHOUT THE WRITTEN CONSENT OF EITHER THE INSPECTOR GENERAL OR THE ASSISTANT INSPECTOR GENERAL FOR INVESTIGATIONS, DIA.

[redacted]

7. [redacted] **Investigative Summary.**

a. [redacted] The Office of the Inspector General (IG) was notified by the [redacted], DIA, that between January and May 2010, Mr. Mallory was suspected of divulging classified information to unauthorized person(s) while employed with ABSC.

b. [redacted] The investigation substantiated that Mr. Mallory violated DoD 5200.1-R and DIAM 50-8 when he divulged classified information to [redacted], Chief, Intelligence Division, ABSC, regarding an opportunity to collect intelligence on the [redacted] through a [redacted] national. Mr. Mallory denied divulging classified information and stated he only provided general information regarding ventures ABSC could explore in the intelligence field to maximize their business opportunities. Even though Mr. Mallory may have spoken in generalities about concepts he developed while he was with DHM, the information was such that [redacted] was able to determine from ABSC's proposal that [redacted] was describing an [redacted] operation.

c. [redacted] This investigation also determined that Mr. Mallory violated DIAI 1426.001 when he obtained outside employment with ABSC and failed to notify his immediate supervisor for possible conflicts of interest between ABSC and DIA.

d. [redacted] Mr. Mallory was interviewed and he denied divulging classified information to ABSC. Mr. Mallory admitted he was employed by ABSC while on administrative leave, but stated he only provided general information regarding ventures ABSC could explore in the intelligence field to maximize their business opportunities. In addition, he acknowledged he had a duty to advise his immediate supervisor at DIA that he had obtained outside employment but chose to tell no one.

e. [redacted] Further, the investigation determined that Mr. Mallory also violated DoD 5240.1-R when he exceeded his authority by discussing DH's planning process, functional plans, and support with ABSC without prior authorization or ABSC displaying a legitimate need-to-know.

8. [redacted] **Receipt of Complaint.** On 28 June 2010, SA [redacted] coordinated with SA [redacted], [redacted] Criminal Investigator, [redacted], who stated that on 4 April 2010, [redacted] notified [redacted] and [redacted] that a former [redacted] may have divulged classified information to ABSC employees. SA [redacted] was informed that during a business meeting with [redacted] personnel, Mr. [redacted] stated that his employee, a former [redacted] and U.S. Army lieutenant colonel (LTC), had access to [redacted] nationals who had unfettered access to the [redacted] in [redacted]

and could provide [redacted] an opportunity to collect intelligence. [redacted] determined that ABSC's proposal was similar to two ongoing [redacted] intelligence operations. Mr. Mallory was later identified as the LTC in question.

9. [redacted] **Significant Interviews.**

a. [redacted] On 6 August 2010, SA [redacted] interviewed Mr. [redacted] Mr. [redacted] stated that he was contacted on 4 April 2010 by Mr. [redacted], contract employee, [redacted], regarding a meeting Mr. [redacted] attended relating to [redacted] intelligence opportunities to work collaboratively with [redacted]. During the meeting, Mr. [redacted] stated that his employee, a former [redacted] employee and reserve LTC, referred to only as "[redacted]" (later identified as Mr. Mallory), had access to [redacted] nationals who could provide information about [redacted]. Mr. [redacted] said the same operational concept had been briefed to the intelligence community about two years ago, but at that time it was not pursued due to other operational commitments. Mr. [redacted] stated that due to the strong correlation between the information Mr. [redacted] provided and two ongoing [redacted] operations, he notified DH (Exhibit 1).

b. [redacted] On 6 August 2010, SA [redacted] interviewed Mr. [redacted] stated that in April 2010, he was advised of a meeting between [redacted] Mr. [redacted] and Mr. [redacted] during which classified information was provided by a former DH case officer. Mr. [redacted] was advised that Mr. [redacted] provided a briefing to [redacted] personnel about a potential [redacted] collection platform for [redacted] that his employee had developed while at [redacted] [redacted] stated that although [redacted] did not have all the details of the operation, he was confident that Mr. Mallory supplied the information to Mr. [redacted] when he was employed by ABSC (Exhibit 2).

c. [redacted]) On 9 August 2010, SA [redacted] interviewed [redacted] who stated that ABSC hired Mr. Mallory in January 2010 to work on one of ABSC's U.S. Army contracts. Mr. Mallory was later asked to provide his expertise concerning business opportunities in the intelligence field. Mr. Mallory told ABSC that he had connections to a [redacted] with ties to an [redacted] [redacted] stated that during a meeting with [redacted], he briefed this information in an attempt to acquire work from [redacted] on other intelligence issues. [redacted] stated that he did not have all the information because Mr. Mallory spoke only in general terms. [redacted] related that he did not think Mr. Mallory provided him with classified information (Exhibit 3).

d. [redacted] On 24 August 2010, SA [redacted] interviewed Mr. [redacted] who stated that in April 2010, he participated in a meeting at which Mr. [redacted] discussed an operational opportunity for the [redacted] to target [redacted]. After the meeting, Mr. [redacted]

was instructed by Mr. [redacted] to research [redacted] databases to ensure there were no similar ongoing operations. Mr. [redacted] found a similar [redacted] joint operation and informed Mr. [redacted] of the strong correlation between what Mr. [redacted] briefed and an ongoing operation (Exhibit 4).

e. [redacted] On 27 August 2010, SA [redacted] interviewed Mr. [redacted] who stated that in March 2010, Mr. [redacted] President and Chief Executive Officer, ABSC, and Mr. [redacted] presented a business opportunity they thought would interest the [redacted] Mr. [redacted] and Mr. [redacted] introduced Mr. [redacted] to Mr. Mallory as someone who had access to a [redacted] asset and could provide information about [redacted] He stated that the [redacted] owned a [redacted] that [redacted] and government agencies and that one of the [redacted] was the [redacted] Mr. Mallory stated that he presented use of this [redacted] as an operational concept to DIA; however, DIA failed to act upon it. Mr. Mallory spoke about the operation's generalities rather than details. Mr. [redacted] stated that when Mr. [redacted] informed him of a [redacted] operation that was very similar, he provided the information to Mr. [redacted] Mr. [redacted] asked Mr. [redacted] and [redacted] to cease briefing the subject. Mr. [redacted] related that he was unsure whether Mr. Mallory divulged classified information to ABSC employees; however, he did believe Mr. Mallory provided general information to ABSC employees that was proprietary to DIA (Exhibit 5).

f. [redacted] On 13 September 2010, SA [redacted] interviewed Mr. [redacted] Mr. [redacted] said Mr. Mallory worked in DHM as a case officer prior to going on administrative leave in July 2009. In March 2010, DIA along with [redacted] implemented the platform Mr. Mallory helped to develop utilizing [redacted] assets to target [redacted] Mr. [redacted] related that based upon the similarities between a brief given to [redacted] by an employee of ABSC, he believed Mr. Mallory divulged classified information that could put assets in jeopardy and harm ongoing operations with [redacted] (Exhibit 6).

10. [redacted] **Subject Interviews.**

a. [redacted] On 4 August 2010, SA [redacted] administered a Garrity rights warning to Mr. Mallory, which he waived and agreed to be interviewed. Mr. Mallory denied divulging classified information to Mr. [redacted] or Mr. [redacted] He said he talked to ABSC personnel about the [redacted] in [redacted] and [redacted] and gave them examples of what to do to provide services to intelligence agencies. He spoke to Mr. [redacted] and Mr. [redacted] on numerous occasions about different issues in the intelligence field. Mr. Mallory related that it was obvious that Mr. [redacted] or Mr. [redacted] took some liberties in modifying his conversations about [redacted] Exhibit 7).

b. [redacted] On 24 September 2010, SA [redacted] administered a Garrity rights warning to Mr. Mallory, which he waived and rendered a sworn affidavit (Exhibit 8). Mr. Mallory was re-interviewed in order to clarify statements he made in his initial interview. Mr. Mallory again denied divulging classified information to ABSC. He stated that prior to being placed on administrative leave by DIA, he was the team chief for a group of [redacted]. He related that he had developed assets targeting [redacted] however, he had no contact with the assets since July 2009. Mr. Mallory stated that he advised ABSC personnel of business opportunities in the intelligence field and gave them advice on how to develop their business. Mr. Mallory denied briefing anyone about concepts he developed while working at DIA. Mr. Mallory could not explain how Mr. [redacted] had knowledge of an operational concept he worked to develop while at DIA. Additionally, Mr. Mallory stated that he knew that he was required to report all outside employment to his immediate supervisor but chose not to do so.

> [redacted] ***Agent's note.*** Mr. Mallory rendered a sworn affidavit in which he provided limited written details in response to the questions asked during the interview. An information report (IR) was drafted to document Mr. Mallory's verbal responses to questions asked during the interview (Exhibit 9).

11. [redacted] **Other Investigative Aspects.**

a. [redacted] On 23 June 2010, SA [redacted] coordinated with SA [redacted] who verified that Mr. Mallory's effective date of employment with ABSC was 15 January 2010.

b. (U//FOUO) On 28 June 2010, SA [redacted] coordinated with Ms. [redacted] DIA, who verified that Mr. Mallory was placed on administrative leave 13 July 2009. His administrative leave was due to end on 12 May 2010; however, Mr. Mallory requested and was granted sick leave for podiatric surgery prior to the expiration of his administrative leave. When Mr. Mallory's sick leave ended on 3 August 2010, [redacted] stated that Mr. Mallory was placed on administrative leave for an undetermined timeframe due to a DAC investigation. [redacted] also stated Mr. Mallory did not notify HC or his immediate supervisor that he obtained outside employment with ABSC while on administrative leave.

c. [redacted] On 29 June 2010, SA [redacted] coordinated with Ms. [redacted], and obtained copies of Mr. Mallory's administrative leave memorandum. A review of the memorandum indicated that Mr. Mallory was placed

[redacted]

on administrative leave on 13 July 2009 and again on 6 May 2010. The memorandum instructed Mr. Mallory to contact his supervisor on a daily basis and to request leave if he departed the Washington, DC, metropolitan area.

d. [redacted] On 30 June 2010, SA [redacted] coordinated with Mr. [redacted] A-5, Intelligence Oversight Inspector, IG, and obtained a copy of the message sent to DH from [redacted] A review of the [redacted] message [redacted] APR 10, subject: [redacted] described [redacted] meeting with ABSC and its concerns that a DH [redacted] officer may have divulged classified information about an active [redacted] operation.

e. [redacted] On 16 November 2010, SA [redacted] coordinated with Mr. [redacted] on the results of this investigation. Mr. [redacted] stated that Mr. Mallory violated two security related regulations (DoD 5200.1-R and DIAM 50-8); therefore, Mr. Mallory's activities also violated Procedure 14, C14.2.1, "Employee Responsibilities," DoD 5240.1-R.

12. [redacted] **Coordination with Management.**

a. [redacted] On 23 June 2010, SA [redacted] briefed Mr. [redacted] on the initiation of this investigation.

b. [redacted] On 14 October 2010, SA [redacted] briefed Mr. [redacted] on the results of this investigation.

13. [redacted] **Regulatory Violations.**

a. [redacted] DoD 5200.1-R, "Information Security Program."

b. [redacted] DoD 5240.1-R, "Procedures Governing the Activities of DoD Intelligence Components that Affect United States Persons."

c. [redacted] DIAI 1426.001, "Employee/Management Relations and Conduct."

d. [redacted] DIAM 50-8, "DIA Personnel Security Program."

14. [redacted] **Coordination with Legal Counsel.** On 14 October 2010, SA [redacted] briefed Mr. [redacted] Counsel to the Inspector General, DIA, on the results of this investigation. Mr. [redacted] opined that Mr. Mallory violated DoD 5200.1-R and DIAM 50-8 when he told ABSC personnel about DH's planning process or functional plans and support. Mr. Mallory divulged classified information to person(s) without a need-to-know. Mr. [redacted] also stated that Mr. Mallory violated

[redacted]

[redacted]

DIAI 1426.001, when he failed to inform his immediate supervisor that he gained employment with ABSC. Further, Mr. Mallory violated DoD 5240.1-R, when he divulged classified information to individuals who did not have a need to know.

15. [redacted] **Internal Management Controls.** DoD Instruction 5010.40, "Managers' Internal Control Program Procedures," 4 January 2006, requires DoD organizations to implement and evaluate a comprehensive system of management controls that provide reasonable assurance that programs are operating in accordance with pertinent laws and regulations. There were no managerial discrepancies noted during the course of this investigation.

16. [redacted] **Exhibits.**

a. [redacted] **Attached.**

(1) [redacted] IR of [redacted], 6 August 2010.

(2) [redacted] IR of [redacted] 6 August 2010.

(3) [redacted] IR of [redacted] 9 August 2010.

(4) [redacted] IR of [redacted], [redacted], 24 August 2010.

(5) [redacted]R of [redacted] 27 August 2010.

(6) [redacted]R of [redacted] 13 September 2010.

(7) [redacted] Garrity warning and IR of Mr. Mallory, 4 August 2010.

(8) [redacted]arrity warning and sworn affidavit of Mr. Mallory, 24 September 2010.

(9) [redacted] IR of Mr. Mallory, 24 September 2010.

b. [redacted] **Not Attached:** Retained in the files of this office.

(10) [redacted] Memorandum pertaining to Mr. Mallory, subject: Administrative Leave, 13 July 2009.

(11) [redacted] Memorandum pertaining to Mr. Mallory, subject: Administrative Leave, 6 May 2010.

(12) [redacted] message [redacted] APR 10, subject: [redacted]

[redacted]

c. The originals of exhibits 1 through 9 are maintained in the files of this office.

17. **(U) Status.** This is a final report. The report of disciplinary action is pending.

Report Prepared By:

Mary A. Hunter-Odrick
Special Agent

Report Approved By:

Ronald Foster, DAIGI
Assistant Inspector General
for Investigations

## INFORMATION REPORT

24 September 2010

Kevin P. Mallory
IA-4
Defense Intelligence Agency
Washington, DC

(█) Mr. Mallory, █████████████████████████████
████████████████████████████████████████
(█) Defense Intelligence Agency (DIA), business telephone number (████) was advised of the identity of (████████) as a Special Agent (SA) with the Office of the Inspector General, DIA. Mr. Mallory was advised that he was being questioned in connection with an official investigation concerning allegations that he found employment with a civilian contractor, Absolute Business Solutions Corporation (ABSC), 11260 Roger Bacon Drive, Reston, VA, and divulged classified information about a (████████████) while employed at (███) Mr. Mallory was also informed under Garrity warnings that his testimony could be used in future administrative or criminal proceedings, was voluntary, and that he was free to terminate the interview, stop answering questions, and leave at any time. Mr. Mallory was advised that his limited access to classified information was limited to the interview. Disclosure of any classified information as a result of the interview was prohibited. Mr. Mallory agreed to sign a Classified Information Non-disclosure Agreement (SF 312), consented to be interviewed and provided substantially the following information.

(█) Mr. Mallory stated that while at (███) he (█████████████) who worked in the (██████) with the (████████) The (██████) (███) did (██████) similar to (█████) for various (██████) Mr. Mallory stated that he only met with them on a few occasions. Before he could actually get the operation initiated, one of the (███) went to (███) and within a day had a (██████). Mr. Mallory was placed on administrative leave in July 2009 and had no further contact with the (███) Mr. Mallory stated that he told Mr (█████████), Chief, Intelligence Operations Division, ABSC, about ventures ABSC could explore in the intelligence community to maximize their business opportunities. Mr. Mallory stated that Mr. (████) obviously embellished some of the business conversations he had with ABSC in order to entice the (████████) (████████████████████████) into doing business with ABSC. Mr. Mallory stated that he did not tell ABSC he was with DIA on administrative leave because it was something he did not want to divulge.

---

Interviewed On: 24 September 2010, 1100 hours  Case No. 2010-006206-OI
At: Washington, DC  By: SA (████████)

([redacted]) **Agent's Note.** Mr. Mallory continued to be vague about how Mr. [redacted] and Mr. [redacted], had knowledge that he was working at recruiting [redacted] doing [redacted] for the [redacted] and that Mr. Mallory wanted to target the [redacted] and [redacted].