# EXHIBIT D

| SUBJECT: | MALLORY, Kevin P. | | | FILE NO: | 20-05165 |
|---|---|---|---|---|---|
| SSN: | ▮▮▮-▮▮-9429 | STATUS: | Civilian (IA-4) | OFFICE: | DIA/DH |
| DOB: | ▮▮-▮▮-57 | POB: | Missouri | NAC Date: | SNAC Date: |
| Investigation: | 2010-006206-OI | Invest. Date: | 11/22/10 | Invest. Agency: | DIA/OIG |
| Other Investigations Reviewed | DIA Agent Report | | 1/5/11 | | |

- ☐ A. Allegiance to the US
- ☒ B. Foreign Influence
- ☐ C. Foreign Preference
- ☐ D. Sexual Behavior
- ☐ E. Personal Conduct
- ☐ F. Financial Considerations
- ☐ G. Alcohol Consumption
- ☐ H. Drug Involvement
- ☐ I. Psychological Conditions
- ☐ J. Criminal Conduct
- ☒ K. Handling Protected Information
- ☐ L. Outside Activities
- ☐ M. Use of Information Technology Systems

Adjudicator: Anthony J. Carchietta AJC

Date Adjudicated: 1/10/11

☐ Psych Review/Date Referred:

☐ ADC Memo/Date Returned:
☐ Date JPAS Entry Made:
☒ Referred to Senior Adjudicator

IS / FS / ITS / FTS / SCI

DAC-3B/GL _____  CONCUR / NON-CONCUR  DATE:

---

DAC-3B/TC  *WMorris*  CONCUR / ~~NON-CONCUR~~  DATE: 1/12/11

Revoke/Deny. (Actual current status confusing)

---

DAC-3▮  *[signature]*  CONCUR / ~~NON-CONCUR~~  DATE: 14 Jan 11

(S) is currently a DIA employee on Admin LV.
(S) was suspended. Please ensure
JPAS accurately reflect (S)'s suspension
on 4 Aug 10... Initiate Revocation

---

DAC-3  *[signature]*  CONCUR / ~~NON-CONCUR~~  DATE: 21 Jan 11

Deny/Revoke.

GOVERNMENT
EXHIBIT
**1-15B**
1:17-cr-154

| SUBJECT: | MALLORY, Kevin P. | FILE NO: | 20-05165 | ADJ: | Carchietta |
|---|---|---|---|---|---|
| SF-86 Date: | 8/26/08 | SUBJECT Interview Date: | 8/4/10 & 9/24/10 | | |

### 1. (U//FOUO) BACKGROUND:

a. (U//FOUO) JPAS indicates that subject (53) was initially granted SCI eligibility by DIA on/about 12/22/05 based on a SBPR completed by OPM on 11/8/04. However, access to DIA facilities was administratively suspended on 7/13/09 and subject was formally debriefed the following day. JPAS entry on 7/23/09 reflects a Loss of Jurisdiction by DIA. SCI eligibility was granted by the Army CAF on 3/14/10. See JPAS Investigation and Adjudication History for a detailed chronology.

b. (U//FOUO) On 9/15/09, subject submitted a Response to Notice of Proposed Removal to the Vice Deputy Director of Human Intelligence thru the Office of Human Resources (HCH-2B). On 8/4/10, he was formally notified that his clearances and access to DIA facilities would remain suspended in light of the ongoing investigation.

c. (U//FOUO) Reports generated by the DIA Office of the Inspector General (OIG) and DAC-4 have been reviewed and were used as a basis for this evaluation.

d. (U//FOUO) Additional information of note: Spouse, born Taiwan, is a U.S. citizen (verified). Mother-in-law, father-in-law, brother-in-law, and sister-in-law are citizens of Taiwan. Phone contact with spouse's parents occurs 2-3 times a year; brief, monthly phone contact with brother-in-law and sister-in-law.

### 2. ▓▓▓ ISSUES: Handling Protected Information, Foreign Influence

a. ▓▓▓ DH Office of Security, memo dated 1/27/10. DH Security received information indicating subject submitted a five-page administrative action rebuttal (with attachments) to the DIA Human Capital Office via priority U.S. mail. Upon review, HC personnel suspected the letter contained classified information. The letter was in-turn forwarded to DH Security, where an inspection confirmed that all but one page contained ▓▓▓ information. Investigation determined that subject intentionally removed header and footer classification markings from attachments, and in doing so, violated policies and procedures for handling classified material.

b. ▓▓▓ DIA Office of the Inspector General (OIG) Investigative Summary dated 11/22/10.

(1) (U//FOUO) The OIG was notified by DAC-4 that between January and May 2010, subject was suspected of divulging classified information to unauthorized person(s) while employed with ▓▓▓.

(2) ▓▓▓ Investigation substantiated that subject violated DoD and DIA regulations when he divulged classified information to Mr ▓▓▓, Chief, Intelligence Division, ▓▓▓ regarding an opportunity to collect intelligence on ▓▓▓. However, subject denied that he divulged classified information and stated he only provided general information regarding methods ▓▓▓ could explore in the intelligence field to maximize their business opportunities. Subject may have spoke in generalities, but the information was such that ▓▓▓ was able to determine that ▓▓▓ was speaking about ▓▓▓.

(3) (U//FOUO) Investigation also determined that subject violated DIAI 1426.001 when he obtained outside employment with ▓▓▓, but failed to notify his immediate supervisor regarding a possible conflict of interest. Subject acknowledged a "duty" to inform his supervisor, but chose to tell no one. Investigation further determined

that subject exceeded his authority and violated DoD 5240.1R when he discussed DH's planning process, functional plans and support without authorization, or ▮ demonstrating a legitimate need-to-know.

c. (U) Subject Interviews.

(1) ▮ On 8/4/10, subject waived his rights and agreed to be interviewed. According to subject, he was placed on administrative leave in July 2009 due to performance issues and disagreements with his supervisor. After he presented his rebuttal to the Deputy Director, Directorate for Human Intelligence, a decision was made to suspend for thirty-days without pay, not terminate him. He was scheduled to return to work on 5/12/10, but due to medical issues, subject requested and was approved sick leave 17 May-3 Aug 10. While on administrative leave subject began to worry about his employment with DIA, fearing a protracted decision process that would result in his being fired. Subject started looking for new employment and was hired as a consultant by ▮ in January 2010. Subject provided consulting services to ▮ on approximately five occasions and was paid for his services. ▮ wanted to use subject's business development expertise to expand their business efforts in the intelligence community. Subject spoke with ▮ and ▮, President and Chief Executive Officer, ▮, on a numerous occasions about different issues in the intelligence field, but denied he ever divulged classified information to ▮ or ▮. Subject spoke with ▮ personnel about the ▮ and gave them examples of what to do to provide services to intelligence agencies. Subject related that it was obvious that ▮ and/or ▮ "took some liberties" in modifying his conversations about ▮.

(2) ▮ On 9/24/10, a follow-up interview was conducted to afford subject the opportunity to clarify earlier statements. Subject again denied divulging classified information to anyone at ▮. Prior to being placed on administrative leave, ▮ Subject denied contact with any of these ▮ since July 2009. He reiterated that he advised ▮ personnel of opportunities in the intelligence field and gave them advice on how to develop their business. Subject denied briefing anyone on concepts he developed while working at DIA, including ▮. Subject acknowledged that he was required to report all outside employment to his immediate supervisor, but chose not to do so.

d. (U//FOUO) According to Ms. Cheryl P. Boudreau, Supervisory Human Resource Specialist, Civilian Operations Division, Directorate for Human Capital (HC), subject was placed on administrative leave 7/13/09. Administrative leave was scheduled to expire 5/12/10, but subject requested and was granted sick leave for surgery prior to the expiration of administrative leave. When subject's sick leave ended on 8/3/10, he was placed on administrative leave indefinitely due to the ongoing DAC investigation. Ms. Boudreau also stated that subject did not notify HC or his immediate supervisor that he obtained employment with ▮ while on administrative leave.

3. (U//FOUO) <u>DISCUSSION</u>: Although he denies it, OIG concluded subject disclosed classified information in conversations with ▮ and ▮ relative to concepts developed while working at DIA. Subject acknowledged that he failed to notify his supervisor and HC of outside employment. Subject believes his suspension, and being placed on administrative leave, was the result of performance issues and disagreements with his supervisor. DH Office of Security determined all but one page of subject's rebuttal was classified, and the evidence indicates he removed classification markings for convenience and expedition. The letter, which contained classified information about DIA cover facilities, persons, and assets, was sent via the unclassified United States Postal Service.

4. (U//FOUO) <u>RECOMMENDATION</u>: Deny SCI eligibility.