# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED IN OPEN COURT

■ 20 2003

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Crim. No. 01-405A |
| | ) |
| BRIAN PATRICK REGAN | ) |

## SENTENCING AGREEMENT

Paul J. McNulty, United States Attorney for the Eastern District of Virginia, Patricia M.
Haynes and James P. Gillis, Assistant United States Attorneys, and Stephen M. Doyle, Senior
Trial Attorney, Counterespionage Section, U.S. Department of Justice, and the defendant, Brian
Patrick Regan, and the defendant's counsel, Nina J. Ginsberg, Jonathan Shapiro, James C. Clark,
and Joseph J. McCarthy, have entered into an agreement, the terms and conditions of which are as
follows:

### GENERAL PROVISIONS

1.    The defendant agrees that his convictions in this matter with regard to Counts One,
Three, and Four of the Superseding Indictment were lawful and supported by the evidence
presented at trial.  As a result and in return for the concessions made by the United States in this
agreement, the defendant knowingly agrees to waive any and all rights he possesses (1) to appeal
his convictions in this matter pursuant to rule 4(b) of the *Federal Rules of Appellate Procedure* on
any ground whatever; (2) to appeal any sentence within the maximum provided in his statutes of

Page 1 of  14

conviction pursuant to 18 U.S.C. § 3742 on any ground whatever; and (3) to collaterally attack the convictions or sentence in this matter pursuant to 28 U.S.C. § 2255 or otherwise.

2.      The United States and the defendant agree that if the Court declines to adopt the sentencing recommendation of the parties discussed below, then this sentencing agreement shall be void, and the parties shall be released from any of its obligations.

3.      The defendant represents to the Court that the defendant is satisfied that his attorneys have rendered effective assistance.

SENTENCING

4.      The United States and the defendant agree that the appropriate sentence in this matter is life imprisonment and jointly recommend that a sentence of life imprisonment be imposed. This is based upon an offense level of 46 (base offense level of 42, U.S.S.G. § 2M3.1(a)(1), plus 2 levels for abuse of trust, U.S.S.G. § 3B1.3, plus 2 levels for obstruction of justice, U.S.S.G. § 3C1.1) and criminal history category I. The defendant agrees that he is not entitled to a decrease in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1 or for any other reason. The defendant agrees not to seek a downward departure on any ground. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this agreement.

5.    The defendant understands and acknowledges that, when sentenced to life imprisonment, there is no possibility of parole, or reductions for good behavior or for any other reason.

6.    The defendant agrees to waive a presentence report and to be sentenced immediately upon acceptance of this agreement by the Court. The parties agree that in view of the above-described agreement concerning the appropriate sentence in this matter, no presentence report is required and the Court may find, pursuant to Rule 32(b)(1), that the information in the record is sufficient to enable the Court meaningfully to exercise its sentencing authority under 18 U.S.C. § 3553.

7.    Nothing in this agreement affects the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), including the right to appeal the sentence imposed.

SPOUSAL SURVIVOR'S ANNUITY

8.    Defendant agrees to the immediate forfeiture of his military retirement, except for that portion of his military retirement which is equivalent to a spousal survivor's annuity, which he hereby assigns irrevocably and without reservation to his wife, Anette Regan. Defendant understands that his wife's receipt of any portion of his military retirement pay is dependent on her continued full cooperation and he agrees that, if the United States determines that his wife has failed to continue her full cooperation, the defendant will, upon request of the United States, execute a consent order of forfeiture covering his entire military retirement including that portion not previously subject to forfeiture. Defendant understands that he stands convicted of violations of 18 U.S.C. §§ 794 and 793 and therefore, pursuant to 5 U.S.C. § 8312, he, his wife, or survivors

shall be precluded from receiving any retirement pay unless the provisions of 5 U.S.C § 8318(e) are invoked.

9.     The United States agrees that, as of the present time, the defendant's wife, Anette Regan, has fully cooperated with federal authorities in the conduct of the criminal investigation and subsequent prosecution of the defendant for violations of 18 U.S.C. §§ 793 and 794. If, in the government's opinion and discretion, Anette Regan continues to be fully cooperative up to and including the date of sentencing, the United States agrees that it will invoke at the time of sentencing the provisions of 5 U.S.C § 8318 (e) to make Anette Regan eligible for spousal pension benefits in the defendant's forfeited military pension. Such benefits shall be equivalent to a survivor's annuity.

10.     The United States will not criminally prosecute the defendant's wife, Anette Regan, for obstruction of justice relating to the charges in the Superseding Indictment and arising before the execution of this agreement.

## SPECIAL ADMINISTRATIVE MEASURES

11.     The defendant is aware of the provisions of 28 C.F.R. § 501.2 governing conditions of incarceration in national security cases and acknowledges that the United States reserves the right to exercise these provisions. The United States agrees that the Director of the National Reconnaissance Office (or other head of an affected member agency of the Intelligence Community) or his designee shall take into account the nature and extent of the defendant's cooperation anticipated under this agreement and shall assess, pursuant to 28 C.F.R. § 501.2, whether there is a continuing danger that the defendant will disclose classified information while incarcerated by the Federal Bureau of Prisons. In consultation with the Intelligence Community

and the Bureau of Prisons, the Attorney General or his designee shall impose only such Special Administrative Measures, or SAMs, as are determined to be necessary to protect the national security of the United States. The United States agrees to place the defendant as soon as practicable under the least restrictive SAMs as are, in the judgement of the Attorney General or his designee, consistent with the needs of national security.

12.     The United States agrees to request at sentencing that the Court recommend to the Bureau of Prisons that the defendant be incarcerated at a facility as close to the defendant's family as practicable, subject to the restrictions of the Special Administrative Measures, or SAMs, applicable to the defendant at the time, and that the defendant be moved to a closer facility as subsequent modifications to the SAMs permit.

TERMS OF COOPERATION

13.     The defendant agrees to cooperate fully and truthfully with the United States, and provide all information known to the defendant regarding any criminal activity. In that regard:

a.     Attachment A, filed under seal, is incorporated by reference in this agreement.

b.     The defendant agrees to cooperate fully and truthfully in the location and recovery of any and all classified documents or information.

c.     The defendant agrees to fully and truthfully inform the United States of any classified document or information that he has disclosed, directly or indirectly, to any person, entity, or country.

d.     The defendant agrees to testify truthfully and completely at any grand juries, trials, or other proceedings.

e.      The defendant agrees to provide all documents, records, writings, or materials of any kind in the defendant's possession or under the defendant's care, custody, or control relating directly or indirectly to any area of inquiry or investigation.

f.      The defendant agrees that, upon request by the United States, the defendant will voluntarily submit to polygraph examinations to be conducted by a polygraph examiner of the government's choice. The defendant stipulates to the admissibility of the results of this polygraph examination if later offered in a proceeding to determine the defendant's compliance with this agreement.

g.      The defendant is hereby on notice that the defendant may not violate any federal, state, or local criminal law while cooperating with the government.

h.      The defendant understands and agrees that his cooperation obligation represents a lifetime commitment by the defendant to the United States to cooperate as described in this agreement.

14.      The defendant acknowledges that he has been advised that the United States will seek no downward departures from the applicable sentencing guidelines, or from the sentence imposed, pursuant to Section 5K of the Sentencing Guidelines, or Rule 35(b) of the *Federal Rules of Criminal Procedure*, in respect to the defendant's cooperation.

15.      The defendant shall disclose in his debriefing any and all money, assets, property, or other items of value obtained as a result of his espionage activity. The defendant agrees to forfeit any and all money or other assets that are the proceeds of, or is in any way traceable to or derived from, his espionage activity. If such money or assets are located outside of the United

States, the defendant shall consent to the entry of an order repatriating the money or assets for purposes of forfeiture.

16.     The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

## USE OF INFORMATION PROVIDED BY DEFENDANT

17.     The United States agrees not to use any truthful information provided pursuant to this agreement against the defendant in any other criminal prosecution against the defendant. Regardless of any other provision of this agreement, however, the United States may use any statement made by the defendant, whether in the form of the statement made in the debriefing of the defendant or in some other form, against the defendant in any prosecution of the defendant resulting from the defendant's breach of this agreement, whether such breach is caused by the defendant providing false information, failing to provide full and complete cooperation, or for any other reason. Such a prosecution includes, but is not limited to, a prosecution for the making of false or perjurious statements or for the defendant's espionage-related activities.

18.     This agreement does not restrict the Court's or Probation Office's access to information and records in the possession of the United States.

19.     This agreement is not conditioned upon charges being brought against any other individual. This agreement is not conditioned upon any outcome in any pending investigation. This agreement is not conditioned upon any result in any future prosecution which may occur

because of the defendant's cooperation.  This agreement is not conditioned upon any result in any future grand jury presentation or trial involving charges resulting from this investigation.  This agreement is conditioned upon the defendant providing full, complete, and truthful cooperation.

## NON-DISCLOSURE AGREEMENTS

20.   The defendant acknowledges that, in connection with his employment by the United States Air Force and TRW, and his work at the NRO, he entered into certain agreements proscribing the unauthorized disclosure of classified information, confidential information, and other information acquired as a part of the defendant's performance of his official duties or acquired from Intelink.  These agreements included the Classified Information Nondisclosure Agreement signed by the defendant on November 25, 1991, the Sensitive Compartmented Information Nondisclosure Agreement signed by the defendant on July 31, 1995, and the Sensitive Compartmented Information Nondisclosure Agreement signed by the defendant on July 30, 2001.  Even though the defendant is no longer an employee of such entities, he acknowledges his continuing duties and obligations under these agreements, and they are incorporated by reference in this agreement.

21.   The defendant understands his continuing legal obligation to refrain from the unauthorized oral or written disclosure of information belonging to the United States Government or acquired by virtue of his United States Government employment or derived from the activities which resulted in his arrest.  Should the defendant at any time author or participate in the creation of any book, writing, article, film, documentary, or other production, or otherwise provide information for purposes of publication or dissemination, including but not limited to information provided through interviews with writers or representatives of any media organization or entity,

the defendant hereby agrees first to submit in a timely fashion such book, writing, article, film, documentary, or other production, or information, to the FBI for timely pre-publication review and deletion of information which, in the discretion of the FBI or an affected member agency of the Intelligence Community, should not be published or disseminated on the grounds of national security or on any other grounds as are already the subject of the defendant's pre-existing non-disclosure agreements.

22.    In order to avoid any interference with the debriefing process, the defendant agrees that during the debriefing process he will provide no interviews or have any other contact with the media, directly or indirectly.

23.    Even after the debriefing process is complete, the defendant agrees that, in recognition of the non-disclosure agreements he has previously executed and pursuant to the terms of this agreement, he will never disclose to any person or entity, except to persons or entities specifically authorized by the United States Government, any classified information, any confidential United States Government information (whether or not such information is formally classified), and all other information acquired as part of his official duties or acquired from Intelink.

24.    The defendant agrees that he will notify the FBI in a timely manner of any contacts he intends to have with any representative of the media in order to insure that an FBI representative and/or other Intelligence Community representative is present, unless such presence is explicitly waived by the FBI, to monitor the information being disseminated and, if necessary, to prevent the unauthorized disclosure of information.  Such contacts include, but are not limited to, contacts in person, contacts by electronic means, and contacts via public or private mail carrier.

## ASSIGNMENT OF ANY PROFITS OR PROCEEDS FROM PUBLICITY

25.     The defendant hereby assigns to the United States any profits or proceeds which he may be entitled to receive in connection with any publication or dissemination of information relating to his person, to his work at the NRO, his espionage activities, the facts and circumstances leading to his arrest and conviction, or acquired from NRO files or Intelink, and agrees that any such profits and/or proceeds constitute the proceeds of his espionage activity for purposes of 18 U.S.C. Section 794(d)(1)(A).  This assignment shall include all profits and proceeds for the benefit of the defendant, regardless of whether such profits and proceeds are payable to himself or to others, directly or indirectly, for his benefit or for the benefit of the defendant's associates or a current or future member of the defendant's family.  The defendant shall not circumvent this assignment by assigning the rights to his story to an associate or to a current or future member of the defendant's family, or to another person or entity who would provide some financial benefit to the defendant, to the defendant's associates, or to a current or future member of the defendant's family.  Moreover, the defendant shall not circumvent this assignment by communicating with an associate or a family member for the purpose of assisting or facilitating their profiting from a public dissemination, whether or not such an associate or other family member is personally or directly involved in such dissemination.

## NO FOREIGN CONTACTS

26.     The defendant shall have no contact with any foreign government or agents thereof, except with the express permission of the FBI, and shall not seek or accept, personally or through another person or entity, any benefit from such foreign government or agent thereof, and should such a benefit be received by the defendant, or some other person or entity on his behalf,

he hereby assigns any such benefit to the United States. For purposes of this paragraph, any benefit provided to an associate of the defendant or to a current or future family member of the defendant which is related to, arises out of, or in recognition of, the defendant's espionage activities is deemed to be a benefit provided to the defendant himself.

## BREACH OF SENTENCING AGREEMENT

27.     If the defendant fails in any way to fulfill completely all of the obligations under this agreement, the United States may seek release from any or all its obligations under this agreement. If released from its obligations under this agreement, the United States may prosecute the defendant or his wife, Anette Regan, to the full extent of the law.

28.     If the defendant fails to fulfill the obligations under this agreement, the defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the *Federal Rules of Evidence*, Rule 11(e) of the *Federal Rules of Criminal Procedure*, or any other federal rule, that the defendant's statements pursuant to this agreement or any leads derived therefrom, should be suppressed or are inadmissible.

29.     Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of the agreement by a preponderance of the evidence. The proceeding established by this paragraph does not apply, however, to the government's decision whether to impose or modify the Special Administrative Measures, or SAMs. The defendant agrees that the decision whether to impose or modify the SAMs rests in the government's sole discretion.

## COMPLETE AGREEMENT

30.     This written agreement constitutes the complete agreement between the United States, the defendant, and the defendant's counsel. The United States has made no promises or representations except as set forth in writing in this agreement. The defendant acknowledges that no threats have been made against the defendant and that the defendant is entering into this agreement freely and voluntarily. Any modification of this agreement shall be valid only as set forth in writing in a supplemental or revised agreement signed by all parties.

## CONCLUDING REPRESENTATIONS

31.     Defendant's Signature:  I hereby agree that I have consulted with my attorneys and fully understand all rights with respect to the pending sentencing arising from my conviction of Counts One, Three, and Four of the Superseding Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines and Policy Statements which may apply in my case. I have read this agreement and carefully reviewed every part of it with my attorneys. I understand this agreement and I voluntarily agree to it.

Date: _3- 20- 03_

_____
BRIAN P. REGAN
Defendant

32.   Defense Counsel's Signature:  I am counsel for the defendant in this case.  I have

fully explained to the defendant the defendant's rights with respect to the pending sentencing

arising from his conviction of Counts One, Three, and Four of the Superseding Indictment.

Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements and I

have fully explained to the defendant the provisions of those Guidelines which may apply in this

case.  I have carefully reviewed every part of this agreement with the defendant.  To my

knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: 3/20/03

Nina J. Ginsberg
Counsel for Defendant

Date: 3/40/03

Jonathan Shapiro
Counsel for Defendant

Date: 3-20-03

James C. Clark
Counsel for Defendant

Date: 3-20-03

Joseph J. McCarthy
Counsel for Defendant

Page 13 of 14

Respectfully submitted,

PAUL J. McNULTY
UNITED STATES ATTORNEY

By: _Patricia M. Haynes_
Patricia M. Haynes
Assistant United States Attorney

_[signature]_
James P. Gillis
Assistant United States Attorney

_[signature]_
Stephen M. Doyle
Senior Trial Attorney
Counterespionage Section
U.S. Department of Justice


APPROVED:

Date: _March 20, 2003_   _[signature]_
GERALD BRUCE LEE
United States District Judge