IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 1:17-CR-154 |
| | ) |
| KEVIN PATRICK MALLORY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Following a four-day trial, a jury convicted defendant of the following four counts of the indictment:

> Count 1: conspiracy to gather or deliver defense information to aid a foreign government in violation of 18 U.S.C. § 794(c);
>
> Count 2: delivery of defense information to aid a foreign government in violation of 18 U.S.C. § 794(a);
>
> Count 3: attempted delivery of defense information to aid a foreign government in violation of 18 U.S.C. § 794(a); and
>
> Count 4: making material false statements in violation of 18 U.S.C. § 1001(a)(2).

Post-trial, defendant moved for judgment of acquittal with respect to Counts 2 and 3 on the ground that the government had failed to prove venue. The jury was not instructed on venue, nor did it render any verdict on venue. Following briefing, Counts 2 and 3 were dismissed by Memorandum Opinion ("the Memorandum Opinion") and Order dated July 26, 2018. *United States v. Mallory*, _ F. Supp. 3d _ (E.D. Va. 2018); *United States v. Mallory*, No. 1:17-cr-00154-TSE-1, Order, ECF No. 202 (Jul. 26, 2018). The government has now filed a motion seeking reconsideration of this ruling. Because the government's motion discloses no clear error of law in the Memorandum Opinion, the government's Motion for Reconsideration must be denied.

1

# I.

The pertinent facts are fully set out in the Memorandum Opinion. *See United States v. Mallory*, _ F. Supp. 3d _, _ (E.D. Va. 2018). The facts relevant to resolving the government's motion are briefly recited here.

In February 2017, defendant, a former CIA and Defense Intelligence Agency operative and contractor, made contact via Skype with Michael Yang, a citizen of the People's Republic of China ("the PRC") who defendant believed was an intelligence officer for the PRC intelligence service. Defendant learned that Yang was interested in obtaining information on various subjects involving National Defense Information ("NDI"), including the United States' THAAD missile defense system, the South China Sea, currency manipulation by the PRC, and public-private partnerships. Following this Skype conversation, defendant and Yang arranged for defendant to travel to the PRC in March and April 2017 to meet in person. During the April 2017 trip, Yang provided defendant with a Samsung Galaxy Note 4 smartphone, which defendant described as a covert communications device ("CovCom device"). This CovCom device included a custom application that allowed defendant to send encrypted communications to Yang through WeChat, a program that was loaded on the CovCom device.

On April 25, 2017, defendant visited a FedEx store at a location near his home in Leesburg, Virginia. During this trip, defendant handed a FedEx clerk nine stacks of documents, some of which contained NDI, to be scanned onto an SD card, a digital storage device. After the scan was complete, defendant directed the FedEx clerk to shred the documents. Defendant then returned to his home in Leesburg and hid the SD card in a junk drawer in his closet.

Shortly before midnight on May 1, 2017 and just after midnight on May 2, 2017, defendant completed all the steps necessary to transmit documents containing NDI to Yang in the PRC via

2

the CovCom device. Yang acknowledged that he had successfully received the documents. A few days later, on May 5, 2017 defendant completed the steps on the CovCom device necessary to transmit two additional documents containing NDI to Yang in the PRC. The evidence does not disclose whether Yang received the documents defendant attempted to send on May 5.

After these transmissions and attempted transmissions, defendant met with the CIA and FBI agents in Virginia on May 12, 2017 and May 24, 2017, respectively. Defendant scheduled the meetings on these dates to accommodate his shoulder surgery, which occurred in early May. In these meetings, defendant described some of his contacts with Yang and showed the CovCom device to FBI agents and demonstrated its operation. On June 22, 2017, defendant was arrested in the Eastern District of Virginia.

In its motion for reconsideration, the government maintains that these facts are sufficient to establish venue in the Eastern District of Virginia for Counts 2 and 3.[1] Specifically, the government argues that the evidence warrants the inference that defendant transmitted and attempted to transmit the NDI from his home in the Eastern District of Virginia. Alternatively, the government argues, for the first time here, that venue is proper under 18 U.S.C. § 3238 because the evidence shows that the successful transmission of NDI occurred in the PRC, establishing venue for Count 2 in the Eastern District of Virginia, where defendant was arrested. Finally, the government argues, as it did in its original motion, that defendant's trip to the FedEx store in the Eastern District of Virginia constituted a substantial step, establishing proper venue for Count 3. Each of these arguments is addressed below.

---

[1] It is worth noting that the government could have avoided this entire dispute by offering evidence, such as cellular tower data, to show where the CovCom device was used on May 1–2 and 5, 2017.

3

## II.

As an initial matter, the government's motion failed to address the standard that must be met to warrant the filing of a motion for reconsideration. When a party in a criminal case moves for reconsideration, it is within the sole discretion of the district court to determine whether it is appropriate to grant the motion. *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) (citing *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)). Because there is no provision in the Federal Rules of Criminal Procedure that governs a motion for reconsideration, "courts are guided by analogy to the standards established by the civil rules." *United States v. Young*, 260 F. Supp. 3d 530, 555 (E.D. Va. 2017). In this respect, courts have sensibly concluded that "[a] motion to reconsider cannot appropriately be granted where the moving party simply seeks to have the Court 'rethink what the Court ha[s] already thought through—rightly or wrongly.'" *Dickerson*, 971 F. Supp. at 1024 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Rather, a motion for reconsideration "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)).

Here, the only possible basis for reconsideration is to correct a clear error of law because the government's motion for reconsideration cites no new evidence unavailable at the time of the trial nor does the government's motion cite any intervening changes in controlling law. In this respect, it is important to note that reconsideration is not warranted on the basis of alleged clear error when the district court has already "squarely addressed and rejected" the arguments the party raises in its motion for reconsideration. *See United States v. Clenney*, No. 1:09CR135, 2009 WL

10677501, at *2 (E.D. Va. July 15, 2009). Many of the arguments in the government's motion for reconsideration fail to clear this first hurdle. Specifically, the Memorandum Opinion squarely addressed and rejected the government's arguments (i) that defendant's storage of the NDI in his home coupled with the late hour at which he transmitted the NDI established venue in the Eastern District of Virginia for Counts 2 and 3; and (ii) that defendant's scanning the NDI onto an SD card at a FedEx store constituted a substantial step and therefore established venue in the Eastern District of Virginia for Count 3. Moreover, as explained below, neither of these recycled arguments, nor the new argument the government raises in its motion, reveal any clear error of law that would, if uncorrected, work manifest injustice on the parties.

### III.

The government argues that it adduced sufficient circumstantial evidence at trial to prove by a preponderance of the evidence that defendant transmitted and attempted to transmit NDI to Michael Yang from the Eastern District of Virginia. This argument fails for the same reasons stated in the Memorandum Opinion.

Unless a criminal statute provides otherwise, venue is "proper only in a district in which an essential conduct element of the offense took place." *United States v. Smith*, 452 F.3d 323, 334–35 (4th Cir. 2006). In this regard, the government must prove by a preponderance of the evidence that defendant committed the act constituting the essential conduct element of the crime in the charged district. *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012). Both direct and circumstantial evidence of the location of the essential conduct may be cited to establish venue. *Id.* The essential conduct on which venue must rest for Count 2 is the actual transmission of NDI. *See United States v. Sterling*, 860 F.3d 233, 243–44 (4th Cir. 2017). And the essential conduct element for Count 3 is a substantial step toward transmitting NDI. *Id.* at 242. Therefore, to establish

venue for Counts 2 and 3, the government must show that defendant was in the Eastern District of Virginia when he actually transmitted NDI on May 1–2 and when he took a substantial step towards transmitting NDI on May 5.[2]

Much of the evidence the government now cites to establish venue was already considered and rejected in the Memorandum Opinion and can be addressed quickly here. The government again points to evidence that defendant stored the NDI and the CovCom device in his home, located in the Eastern District of Virginia, and that the transmissions occurred at a late hour, when many people are at home. According to the government, the jury could infer from this evidence that the attempted and actual transmissions of NDI occurred in the Eastern District of Virginia.

As explained in the Memorandum Opinion, these arguments fail because the Fourth Circuit has held that "a trial jury is not permitted to 'speculate' to establish venue . . . ." *United States v. Mallory*, _ F. Supp. 3d _, _ (E.D. Va. 2018) (citing *Sterling*, 860 F.3d at 244). Specifically, the Fourth Circuit in *Sterling* rejected the argument that the government could establish where the defendant transmitted NDI based on where the defendant lived or stored the NDI. *Sterling*, 860 F.3d at 244. Without direct evidence, the government must provide an "evidentiary hook," such as evidence of how or where defendant made similar transmissions in the past, to enable the jury to infer that defendant followed a similar method in this case. *Id.* Applying the Fourth Circuit's reasoning in *Sterling* to this case, it is clear that the government's arguments fail because they do not provide an evidentiary hook regarding defendant's location when he attempted to transmit and successfully transmitted NDI. Although the defendant stored the NDI and devices in his home, the CovCom device was mobile and defendant's home was in close proximity to several other districts

---

[2] It is clear that defendant's conduct on May 5, which included completing all of the necessary steps to transmit two additional documents containing NDI via the CovCom device to Yang in the PRC, constituted a substantial step toward completing the underlying offense of successfully transmitting NDI to a foreign government. Neither party disputes this finding.

including the District of Maryland, the District of D.C., and the Western District of Virginia. And while it is true that many people are at home at midnight, many others are not. Therefore, this evidence equips the jury only to speculate about where the defendant was located when he transmitted the NDI to his Chinese contact. This is insufficient to establish venue. *See id.*

The other evidence that the government highlights for the first time in its motion for reconsideration also falls short of establishing venue. First, the government points to evidence that the defendant underwent shoulder surgery during the first week of May 2017 and asked to wait to schedule a meeting with his CIA point of contact until the week after the surgery. The government argues that this evidence allowed the jury to conclude that defendant was unable to drive outside of the Eastern District of Virginia during the first week of May 2017. But this evidence only invites speculation that defendant could not drive. It also fails to demonstrate that defendant was unable to access other means of transportation or that, even if defendant was unable to travel, he was stuck at home on May 1–2 or May 5, the dates on which defendant attempted to transmit and successfully transmitted NDI. Second, the government argues that because the CovCom device was contraband, defendant probably did not remove it from his home. Of course, the fact that many criminals do carry contraband with them when they leave their homes shows that this argument merely invites the jury to speculate about defendant's practices. Ultimately, neither of these new arguments raised provide an "evidentiary hook" for the inference that defendant was at his home in the Eastern District of Virginia when he attempted to transmit and successfully transmitted NDI. *See id.* Like the recycled arguments dismissed above, the government's arguments based on defendant's surgery and the risk of transporting the CovCom device fail to provide evidence of defendant's personal tendencies or past practices, as dictated by *Sterling*, upon which the jury could infer the defendant's location on May 1–2 and 5, 2017. *See id.*

Seeking to avoid the impact of this conclusion, the government argues that even if the evidence is insufficient to show that defendant committed the essential conduct of Counts 2 and 3 within the Eastern District of Virginia, the jury could still conclude that the transmission began in the Eastern District of Virginia and was completed in another district. In support of this argument, the government quotes *Sterling*, in which the Fourth Circuit stated, "[i]f essential criminal conduct takes place in more than one district, the government may prosecute those offenses 'in any district in which such offense was begun, continued, or completed.'" *Id.* at 241. Essentially, the government argues that defendant began the offenses of transmitting and attempting to transmit NDI by scanning the NDI onto an SD card at a FedEx store in the Eastern District of Virginia and hiding the SD card in his home in the Eastern district of Virginia. The government then argues that Special Agent Green's testimony that defendant was "in the United States" on May 3, 2017 demonstrates that defendant was also in the United States on May 1–2 and 5, when he completed the offenses of transmitting and attempting to transmit NDI. Therefore, according to the government, venue is proper in the Eastern District of Virginia because defendant began the essential conduct of Counts 2 and 3 in this district and completed it elsewhere.

This argument fails because it is based on a misreading of *Sterling*. The Fourth Circuit made clear in *Sterling* that "[a]cts which are merely preparatory to the underlying offense and its essential conduct . . . cannot provide a basis for venue." *Id.* (internal quotes omitted). Instead, essential conduct elements "remain the focus of venue analysis," and venue is only proper in more than one district "when such essential conduct occurs in multiple districts." *Id.* at 244 n.3. Applying this principle, the Fourth Circuit in *Sterling* concluded that venue was proper in the Eastern District of Virginia for the charges of attempted transmission of classified information because the evidence showed that the defendant sent communications from the Eastern District of Virginia in

which he sought to convince a third party to publish classified information. While these steps alone may not have been sufficient to constitute a substantial step, the essential conduct of attempt, the Fourth Circuit in *Sterling* found that the crime of attempt was at least begun or continued in the Eastern District of Virginia based on the steps taken by the defendant in that district. *Id.* at 242. In other words, even if the essential conduct was not completed in the district, evidence that defendant began to commit the proscribed conduct in the district is sufficient to establish venue there. *Id. See also United States v. Ebersole*, 411 F.3d 517, 531 (4th Cir. 2005) (concluding that venue was proper both in the district where defendant presented the false claim to an intermediary and in the district where the intermediary presented the false claim to the targeted federal agency).

In this case, unlike in *Sterling*, the evidence relied on by the government does not rise to the level of beginning essential conduct; it is merely antecedent preparation. Defendant did not begin to transmit or to attempt to transmit NDI to his Chinese contact by scanning the NDI onto an SD card at the FedEx store and hiding the SD card in his home because, while these steps were necessary to enable defendant to engage in proscribed conduct, they were not part of the proscribed conduct relevant to Counts 2 and 3. The flaws in the government's argument are underscored by cases in which conduct that was antecedent to, but not part of, the conduct prohibited by the statute was insufficient to establish venue. *See, e.g., United States v. Cabrales*, 524 U.S. 1, 7 (1998) (holding that venue for money laundering is determined by the location of the monetary transactions proscribed by the money laundering statute, not the "anterior criminal conduct that yielded the funds allegedly laundered"); *Sterling*, 860 F.3d at 241; *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) (holding that although a scheme to defraud is essential to the commission of mail fraud, venue lies where an individual actually misuses the mail and not where the scheme is devised). In sum, because the act of placing the NDI onto the SD card was antecedent

to but not part of the statutorily proscribed conduct. that action cannot be the basis for venue under *See Sterling*, 860 F.3d at 241.

## IV.

Next, the government repeats the argument, already considered and rejected in the Memorandum Opinion, that venue was established for Count 3 because defendant's scanning NDI onto an SD card at the FedEx store located in the Eastern District of Virginia constituted a substantial step toward completion of the crime of transmitting NDI. This recycled argument fails again.

For purposes of an attempted transmission of NDI, venue is proper anywhere the defendant "committed a substantial step toward communicating, delivering, and transmitting" the NDI. *Sterling*, 860 F.3d at 242. And a substantial step is "a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012). Further, a substantial step is "more than mere preparation but less . . . than completion of the crime." *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996). Importantly, in deciding whether conduct is merely preparatory or a substantial step toward commission of the crime, "a court must assess how probable it would have been that the crime would have been committed—at least as perceived by the defendant— had intervening circumstances not occurred . . . ." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003).

It is true, as the government argues, that a substantial step need not be the last possible act before the commission of a crime. *Pratt*, 351 F.3d at 136. Rather, the focus of the substantial step inquiry is on the actions already taken to complete the underlying crime. *Engle*, 676 F.3d at 423. If the completed conduct "comes so near to the accomplishment of the crime that it becomes

probable that the crime will be committed absent an outside intervening circumstance," defendant has taken a substantial step toward committing the crime. *Pratt*, 351 F.3d at 136. In other words, the question is whether defendant's conduct is sufficient to provide firm corroboration that defendant intends to commit the crime and to show that, absent intervening circumstances, it is probable that defendant will complete the crime.

These principles applied here point persuasively to the conclusion that defendant's scanning NDI onto an SD card was merely preparation for committing the offense and not the required substantial step toward committing the offense. This is so because defendant's conduct is not "strongly corroborative" of defendant's intent to commit the crime of transmitting NDI. *See Engle*, 676 F.3d at 423. Rather, the action of digitally preserving the NDI on an SD card is an action that is not free from ambiguity as to defendant's intent in preserving the information on the SD card. Defendant's conduct is fully consistent with the possibility that defendant intended only to store the NDI and to defer to a later time the decision whether to transmit the NDI to the Chinese agent or perhaps to share the NDI with his CIA contacts.

This conclusion is supported by the fact that eight days elapsed between defendant's trip to the FedEx store and the date on which defendant transmitted NDI to the Chinese agent. During these eight days, defendant may well have continued to deliberate on whether to commit the crime of transmitting NDI or instead to seek to persuade the CIA to hire defendant to serve as a double agent. Indeed, if defendant had already resolved to sell NDI to the Chinese intelligence service, it is unclear why defendant would wait over a week to transmit the scanned documents. Moreover, the evidence at trial revealed that during this same eight-day period, defendant sent several messages to a contact at the CIA, John Doe, to inform Doe that defendant had been in communication with the Chinese intelligence service and to ask Doe to notify EA/China, the CIA's

Chinese operations office, concerning defendant's interactions with Chinese intelligence agents. This activity underscores the ambiguity in defendant's placing NDI on the SD card and invites the inference that defendant was still considering playing a double agent role. Put another way, defendant's activity in communicating with the CIA's Chinese operations demonstrates that defendant's putting NDI onto the SD card is far from "strongly corroborative" of defendant's intent to commit the act of espionage. *See Engle*, 676 F.3d at 423.

Finally, although defendant knew that he needed to scan the NDI onto an SD card in order to transmit it via the CovCom device, there is no evidence that defendant had been directed by the Chinese agent to complete this step on April 25 and then to transmit the NDI eight days later. In other words, defendant's conduct at the FedEx store is, at most, ambiguous with respect to defendant's intent to transmit NDI to the Chinese agent. Indeed, the facts discussed above suggest that at the time defendant scanned NDI onto the SD card at the FedEx store, defendant was ambivalent about whether defendant wanted to sell NDI to the Chinese intelligence service or to act as a double agent for the CIA. Thus, while scanning the NDI onto the SD card was certainly a necessary step that enabled defendant to transmit the NDI to the Chinese agent, this conduct is not "strongly corroborative" of defendant's intent to commit the crime of transmitting NDI, as is required for the conduct to constitute a substantial step toward committing the crime; it is merely one of several preparatory steps. *See id.*; *Pratt*, 351 F.3d at 136.

This conclusion finds support in the two espionage cases cited by the government, as those cases provide a helpful contrast to the facts of this case. First, in *United States v. Pelton*, the Fourth Circuit held that the defendant had taken a substantial step toward conveying national security information to Soviet agents by travelling to Austria and waiting in the meeting area for three days for a rendezvous with the Soviet agents. 835 F.2d 1067, 1074 (4th Cir. 1987). This was a

substantial step toward the commission of the crime, the Fourth Circuit explained, because although these steps were not the last actions necessary to complete the crime, the fact that the defendant had travelled overseas to the meeting site with knowledge of the sensitive information and attempted to contact the Soviet agents demonstrated that the defendant in *Pelton* clearly had the intent to convey national security information to the foreign agents. *Id.* Unlike defendant's ambiguous scanning of NDI onto an SD card in the present case, the conduct of the defendant in *Pelton*—international travel and waiting in the designated meeting area for three days—was strong corroboration of that defendant's intent to commit the crime because the conduct clearly demonstrated a firm commitment to accomplish the crime.

Similarly, in *Sterling*, the Fourth Circuit concluded that the defendant in that case had committed a substantial step toward transmitting classified information to the public by contacting a *New York Times* reporter and attempting to convince the reporter to publish the classified information. *Sterling*, 860 F.3d at 242. As in *Pelton*, this activity by the defendant in *Sterling* is unquestionably "strongly corroborative" of that defendant's intent to commit the crime. Indeed, the corroborative weight of attempting to convince a third party to publish classified information goes well beyond the equivocal and ambiguous nature of merely taking the step of storing the information on an SD card. Importantly, the Fourth Circuit in *Sterling* did not even consider nor did it address the fact that the defendant in that case had stored the classified information in his house without authorization as evidence that the defendant had taken a substantial step toward committing the offense. This further indicates that defendant's mere scanning of documents containing NDI onto an SD card in this case is at most weak corroboration, not strong corroboration, of defendant's intent to transfer NDI. As such, the step of scanning NDI onto an SD card is a preparatory act but not a substantial step and thus not sufficient to establish venue.

Thus, in each of these cases, the Fourth Circuit determined that the defendants in these cases had taken a substantial step toward commission of the offense because the defendant's conduct, rather than strongly corroborating their intent to communicate sensitive information, only equivocally did so. As explained above, defendant's conduct in the present case provides a much weaker basis from which to determine the probability of whether defendant would transmit NDI. For that reason, it is necessary to conclude that defendant's conduct at the FedEx store on April 25, 2017 constituted preparatory, antecedent conduct, and that the government therefore failed to show that defendant committed a substantial step in the Eastern District of Virginia.

V.

Finally, the government argues here, for the first time, that sufficient evidence was adduced at trial to establish venue for Count 2 under 18 U.S.C. § 3238 because some of defendant's criminal conduct occurred overseas and defendant was arrested in the Eastern District of Virginia. This argument fails because it misreads and misconstrues § 3238.

By its own terms, venue is not established under § 3238 when the defendant commits the essential conduct constituting the offense within the United States. *United States v. Perlitz*, 728 F. Supp. 2d 46, 57 (D. Conn. 2010). Rather, the history and text of § 3238 make clear that "the statute focuses on offense conduct outside of the United States." *United States v. Miller*, 808 F.3d 607, 619 (2d Cir. 2015). Under § 3238, venue is proper "in the district in which the offender . . . is arrested or first brought" for "all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district . . . ." 18 U.S.C. § 3238. For purposes of venue, an offense is "committed" where the essential conduct element of the crime took place. *United States v. Sterling*, 860 F.3d 233, 241 (4th Cir. 2017); *United States v. Smith*, 452 F.3d 323, 334–35 (4th Cir. 2006).

It is undisputed that the essential conduct on which venue must rest for Count 2 is the "transmission" of NDI. In that regard, the government has pointed to no evidence that defendant was upon the high seas or outside of the jurisdiction of any district of the United States when he transmitted the NDI to Yang around midnight on the night of May 1–2, 2017. The only direct evidence adduced at trial related to defendant's location on those dates was defendant's April 25, 2017 trip to the FedEx store located in the Eastern District of Virginia, defendant's May 12, 2017 interview at CIA headquarters, and Special Agent Green's testimony that defendant was "in the United States" on May 3, 2017. Therefore, because there is no evidence that the conduct constituting defendant's offense took place on the high seas or outside of the United States, § 3238 is inapplicable.

Seeking to avoid this conclusion, the government argues that because the NDI was successfully delivered to the PRC, the transmission of the classified information occurred not just in the United States but also in the PRC. This argument also fails because it is well-settled that "[w]hen a criminal offense does not include a specific venue provision, venue 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Smith*, 452 F.3d 323, 334 (4th Cir. 2006) (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)). As already noted, the act constituting the crime charged under Count 2 is the transmission of NDI conducted by defendant on May 1–2. *See Sterling*, 860 F.3d at 243–44 (holding that the essential conduct element of § 793(e) is the "communication, delivery, or transmission" of NDI). And the Fourth Circuit has made clear that the relevant location for purposes of venue in an unlawful transmission of NDI prosecution is the location of the proscribed act of transmission, not the ultimate destination of the NDI. *See id.*; *United States v. Truong Dinh Hung*, 629 F.2d 908, 919 n.11 (4th Cir. 1980). Therefore, the proper *locus delicti* in this case is the

location from which defendant transmitted the NDI—that is to say, where defendant was located when he "pressed send"—and not wherever the NDI was electronically received. Because there is no evidence that defendant committed this proscribed act upon the high seas or outside of the jurisdiction of any State, venue is not established in the place of defendant's arrest under § 3238.

The cases the government cites do not hold to the contrary or compel a different result. In *United States v. Kampiles*, the Seventh Circuit concluded that venue was proper in the district where the defendant was arrested on charges of delivering top secret material to a Soviet agent. 609 F.2d 1233, cert. denied, 446 U.S. 954 (1979). Importantly, the evidence in that case demonstrated that the defendant was in Greece when he met with and turned over sensitive documents to the foreign agents. *Id.* at 1236–38. Thus, venue was properly established under § 3238. *Id.* at 1238–39. And in *United States v. Levy Auto Parts of Canada*, the Fourth Circuit held that venue was proper under § 3238 in the district of a co-conspirator's arrest because the charged conspiracy "had been fully committed outside the United States, and many acts in furtherance of it had been done in Canada, Pakistan, Greece, and Iran." 787 F.2d 946, 952 (4th Cir. 1986). Although two of the twenty-six overt acts alleged in *Levy Auto Parts* occurred in the United States, the Fourth Circuit there found that § 3238 was not rendered inapplicable because this domestic conduct was insubstantial, tangential, and tenuously connected to the conspiracy. *Id.* at 951–53. The obvious difference between these cases and the instant case is that the essential criminal conduct in those cases was committed outside of the jurisdiction of any state, whereas in this case, there is no evidence to show that defendant was outside of the United States when he transmitted NDI to Chinese agents.

Likewise, the remaining cases the government cites are also inapposite because those cases found that § 3238 was properly invoked when the essential criminal conduct was committed upon

the high seas or outside of the jurisdiction of the United States and any conduct occurring in the United States was insubstantial. *See United States v. Jensen*, 93 F.3d 667, 670 (9th Cir.1996) (charges resulting from operating unseaworthy vessel on high seas); *United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir.1979) (per curiam) (charges resulting from seizure of marijuana on vessel on the high seas in the Gulf of Mexico); *United States v. Williams*, 589 F.2d 210, 211 (5th Cir. 1979) (charges arising from U.S. Coast Guard seizure of marijuana on vessel on the high seas with only one overt act committed in New York); *United States v. Bin Laden*, 91 F. Supp. 2d 600, 614 (S.D.N.Y. 2000) (charges arising from bombing of U.S. embassies in Kenya and Tanzania "that occurred exclusively outside the jurisdiction of any particular state").

These cases are easily distinguishable from the present case because the government has adduced no evidence that defendant committed the criminal conduct essential to Count 2 upon the high seas or outside of the jurisdiction of any state. Rather, the evidence at trial all pointed to the conclusion that defendant was in the United States when he transmitted NDI to Yang in the PRC. Here, venue cannot be established in the Eastern District of Virginia based on the fact that defendant was arrested there because there is no evidence that defendant committed the essential conduct of Count 2 outside of the jurisdiction of any State, which renders § 3238 inapplicable by its terms and its purpose.

## VI.

For all of the foregoing reasons, the government's motion for reconsideration is denied. But it is worth noting that much ink has been spilled, chiefly because the government failed to present additional evidence on venue, *e.g.* cell tower or surveillance evidence, and failed to request that the jury be instructed on venue and decide venue. It is clear from the parties' post-trial positions on venue that the parties dispute the facts of venue. In these circumstances, the Fourth

Circuit has made clear that it is appropriate to submit to the jury any factual dispute relating to venue. *United States v. Engle*, 676 F.3d 405, 413 (4th Cir. 2012); *United States v. Ebersole*, 411 F.3d 517, 526 n.10 (4th Cir. 2005). *See also United States v. Perez*, 280 F.3d 318, 327 (3d Cir. 2002) (holding that failure to instruct the jury to resolve a factual dispute relevant to determining whether venue is proper may constitute reversible error if the defendant requests a jury instruction on venue). The importance of this directive is clear where, as is the case here, failure by the government to submit the venue question to the jury results in post-trial factual disputes that could have more properly been resolved by the finder of fact at trial.

An appropriate Order will issue.

Alexandria, Virginia
September 27, 2018

/s/
T. S. Ellis, III
United States District Judge