IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Criminal No. 1:17-CR-154 |
|  | ) |  |
| KEVIN PATRICK MALLORY, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

Following a four-day trial, a jury convicted defendant of the following four counts of the indictment:

> Count 1: conspiracy to gather or deliver defense information to aid a foreign government in violation of 18 U.S.C. § 794(c);
>
> Count 2: delivery of defense information to aid a foreign government in violation of 18 U.S.C. § 794(a);
>
> Count 3: attempted delivery of defense information to aid a foreign government in violation of 18 U.S.C. § 794(a); and
>
> Count 4: making material false statements in violation of 18 U.S.C. § 1001(a)(2).

Defendant then moved for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., with respect to Counts 1, 2 and 3 on a variety of grounds.[1] Following briefing, a Memorandum Opinion and Order dated July 26, 2018 issued, denying in part and granting in part defendant's Rule 29 motion. *United States v. Mallory*, _ F. Supp. 3d _ (E.D. Va. 2018) ("*Mallory I*"); *United States v. Mallory*, No. 1:17-cr-00154-TSE-1, Order, ECF No. 202 (Jul. 26, 2018). Specifically, defendant's motion was granted with respect to Counts 2 and 3 on the ground that the government's evidence did not establish venue for those Counts, but the motion was denied in all other respects. The government

---

[1] Specifically, defendant argued judgment of acquittal was required because (i) the government's evidence at trial was insufficient to support the conspiracy charge alleged in Count 1, (ii) it was an error to deny defendant's request for a buyer-seller instruction in connection with the conspiracy charge alleged in Count 1, and (iii) the government's evidence at trial was insufficient to support a finding of venue for the offenses charged in Counts 2 and 3. *Mallory I*.

1

then moved for reconsideration of the venue ruling, arguing that the evidence adduced at trial was sufficient to establish venue for Counts 2 and 3. Following briefing and argument, a Memorandum Opinion and Order dated September 27, 2018 issued, denying the government's motion. *United States v. Mallory*, _ F. Supp. 3d _ (E.D. Va. 2018) ("*Mallory II*"); *United States v. Mallory*, No. 1:17-cr-00154-TSE-1, Order, ECF No. 226 (Sept. 27, 2018).

Defendant's remaining post-trial motion[2] seeks a new trial pursuant to Rule 33, Fed. R. Crim. P., with respect to Counts 1, 2 and 3[3] and judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., with respect to Count 4. Specifically, defendant argues that with respect to Counts 1, 2 and 3 the jury instructions incorrectly described the scienter requirement for those Counts. And defendant argues that with respect to Count 4 the government's trial evidence impermissibly amended the indictment. For the reasons that follow, this motion must be denied.

**I.**

The pertinent facts may be briefly stated as follows.[4] Defendant is a former CIA and Defense Intelligence Agency (DIA) operative and contractor. During defendant's service as a CIA and DIA operative and contractor, defendant held a top-secret clearance and had access to highly classified information and documents, some of which defendant took home with him when he left the service.

In February 2017, defendant made contact via Skype with Michael Yang, a citizen of the People's Republic of China ("the PRC") who defendant believed was an intelligence officer ("IO")

---

[2] Defendant's motion for a new trial and for judgment of acquittal was filed in a single document but docketed as two separate motions.

[3] Although Counts 2 and 3 have been dismissed for failure to prove venue, it is important to note that in the event the government successfully appeals this ruling and defendant's convictions on Counts 2 and 3 are reinstated, then the arguments and result reached here regarding defendant's motion for a new trial on the adequacy of the instruction on scienter apply to Counts 2 and 3 as well as to Count 1.

[4] For a more extensive recitation of the facts of this case *see Mallory I*.

2

for the PRC intelligence service. Defendant learned that Yang was interested in obtaining information on various subjects involving National Defense Information ("NDI"), including the United States' THAAD missile defense system and currency manipulation by the PRC.[5] Following this Skype conversation, defendant and Yang arranged for defendant to travel to the PRC in March and April 2017 to meet in person. During the April 2017 trip, Yang provided defendant with a Samsung Galaxy Note 4 smartphone, which defendant described as a covert communications device ("CovCom device"). This CovCom device included a custom application that allowed defendant to send encrypted communications to Yang through WeChat, a program that was loaded on the CovCom device.

On April 25, 2017, defendant visited a FedEx store at a location near his home in Leesburg, Virginia. During this trip, defendant handed a FedEx clerk nine stacks of documents, some of which defendant had retained from his period of service as a CIA and DIA operative and which contained NDI. Defendant directed the FedEx clerk to scan the documents onto an SD card, a digital storage device. After the scan was completed, defendant directed the FedEx clerk to shred the documents. Defendant then returned to his home in Leesburg and hid the SD card in a junk drawer in his closet.

Shortly before midnight on May 1, 2017 and just after midnight on May 2, 2017, defendant used the Covcom Device and the SD card to transmit to the PRC IO's two documents—a "Table of Contents," which described eight classified United States government documents, and "Document No. 1," which was labeled "S & T Targetting [sic] in China." "Document No. 1"

---

[5] The Espionage Act, 18 U.S.C. §§ 794(a), (c), criminalizes communicating, attempting to communicate, and conspiring to communicate information related to the national defense ("NDI"). NDI is defined as information (1) that relates to the nation's military activities, intelligence gathering or foreign policy; (2) that is closely held by the government, in that it does not exist in the public domain; and (3) that is such that its disclosure could cause injury to the nation's security. *United States v. Rosen*, 445 F. Supp. 2d 602, 643 (E.D. Va. 2006), amended, No. 1:05CR225, 2006 WL 5049154 (E.D. Va. Aug. 16, 2006), and aff'd, 557 F.3d 192 (4th Cir. 2009).

contained information drawn from a classified PowerPoint proposal that defendant had worked on relating to a human asset operation, which trial testimony showed included NDI. Yang acknowledged that he had received these documents. A few days later, on May 5, 2017 defendant completed the steps on the CovCom device necessary to transmit two additional documents containing NDI to Yang in the PRC. The evidence does not disclose whether Yang received the documents defendant attempted to send on May 5.

After completing these transmissions and attempted transmissions, defendant met with the CIA and FBI agents in Virginia on May 12, 2017 and May 24, 2017. In these meetings, defendant described some of his contacts with Yang. Defendant also showed the agents the CovCom device and demonstrated the device's operation.

During the May 24, 2017 meeting, the FBI questioned defendant about documents defendant had provided to PRC IO's. Specifically, Special Agent Green asked defendant whether defendant had given the PRC IO's any documents other than two papers defendant wrote for the IO's when he was in China and whether defendant had sent any documents to the PRC IO's via the CovCom device. In response, defendant answered that he had not given the IO's any other documents and that he had not yet figured out how to send the IO's documents via the CovCom device.

On June 22, 2017, defendant was arrested in the Eastern District of Virginia. During a search of defendant's home, the FBI found the SD card onto which defendant had scanned the documents containing NDI wrapped in aluminum foil and hidden in a junk drawer. Although it appeared that defendant had attempted to delete the documents containing NDI from the SD card's memory, the FBI was later able to recover the documents from the deleted space of the SD card. Neither the "Table of Contents" nor "Document No. 1" contained any classification markings

when recovered from the SD card on June 22, 2017. But some of the other documents defendant had scanned onto the SD card, and from which defendant had extracted classified information to create the "Table of Contents" and "Document No. 1," still contained visible classification markings when recovered by the FBI.

## II.

Defendant first argues that a new trial is warranted with respect to Counts 1, 2 and 3 because the jury instructions incorrectly described the scienter requirement for conviction under §§ 794(a) and (c). More specifically, defendant argues that the instructions diluted the statute's scienter requirement, allowing the jury to find defendant guilty on the basis of negligence. This argument fails as the instructions, taken as a whole as required,[6] correctly and adequately instructed the jury on the scienter required to prove guilt under §§ 794(a) and (c).

It is well-settled that a defendant "is entitled to an instruction correctly informing the jury of the law" and that a failure to instruct the jury correctly warrants a new trial. *United States v. Black*, 692 F.2d 314, 319 (4th Cir. 1982) (reversing the defendant's conviction for assaulting a correctional officer and remanding for a new trial because the district court's instruction regarding self-defense was erroneous). At issue here, therefore, is whether the jury instructions on scienter adequately and correctly charged the jury.

The jury instruction on the scienter requirement applicable to Counts 1, 2 and 3 began with the precise words of § 794(a).

> [The Government must prove] that the defendant, Kevin Patrick Mallory, acted with the intent or reason to believe that such information was to be used to the injury of the United States or to the advantage of a foreign nation, that is, the People's Republic of China.

---

[6] *See Henderson v. Kibbe*, 431 U.S. 145, 153 n.10 (1977) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.").

*United States v. Mallory*, No. 1:17-cr-00154-TSE-1, Tr. of Proceedings Held on 6/7/2018, ECF No. 223, at 1200 (June 7, 2018) [hereinafter Tr.]. The instruction continued by clearly stating to the jury that the phrase "reason to believe" required the jury to find that "the defendant knew facts from which he concluded or reasonably should have concluded that the information relating to the national defense was to be used for the prohibited purposes." *Id.* at 1203. And the jury was also clearly instructed that it could not convict defendant on the basis of mere negligence.

> [A] defendant has "reason to believe" if the defendant knew facts from which he concluded or reasonably should have concluded that the information relating to the national defense was to be used for the prohibited purposes. It does not mean that the defendant acted negligently. In determining whether a defendant has "reason to believe," the question is whether a reasonable person in the defendant's position would have reached the same conclusion.

*Id.* To emphasize to the jury that defendant could not be convicted on mere negligence, the jury was further instructed that the jury must find that defendant acted willfully. Specifically, the jury was instructed that

> [T]he government must also prove that the defendant acted willfully in communicating, delivering, or transmitting information related to the national defense. An act is done willfully if it is done voluntarily and intentionally and with the specific intent to do something that the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law. With respect to the offenses that are charged in the indictment specific intent must be proved beyond a reasonable doubt before a defendant can be convicted. Specific intent, as that term suggests, requires more than a general intent to engage in a certain conduct. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids.

*Id.* at 1203–04.

Defendant argues that these jury instructions incorrectly allowed the jury to convict defendant on a showing of mere negligence as to whether the NDI that defendant transmitted could be used to harm the United States or to aid the PRC. This argument fails; the terms of the instructions, taken as a whole, flatly contradict this argument. Indeed, the instruction on scienter correctly charged the jury that to convict defendant, the jury was required find beyond a reasonable

6

doubt that defendant acted with the conscious knowledge of facts from which it would be reasonable for defendant, personally, to conclude that the NDI was to be used for the statutorily prohibited purposes—namely, to harm the United States or to aid the PRC.

The instruction on scienter in this case charged the jury that to convict defendant, the jury must find that defendant acted—in the words of § 794(a)—with "intent or reason to believe."[7] Tr. at 1200. The instruction further explained that "reason to believe" means that "defendant knew facts from which he concluded or reasonably should have concluded that the information relating to the national defense was to be used for the prohibited purposes." *Id.* at 1203. This language clearly directed the jury to determine both the facts that defendant himself knew and whether those facts were sufficient for defendant himself to conclude that the NDI defendant delivered, attempted to deliver, and conspired to deliver was to be used to harm the United States or to benefit the PRC.

Importantly, the instruction also charged the jury to determine whether defendant reasonably should have concluded that the NDI, in the words of § 794(a), "*was to be used*" for the prohibited purposes, not merely that, in the language of § 793(d), it "could be used" for those purposes. *Id.* at 1200, 1203. Thus, the instructions incorporated what the Fourth Circuit has called the "strong scienter language of § 794(a)," which requires the government to show that defendant acted with reason to believe that the NDI "is to be used" for the prohibited purposes. *See Truong Dinh Hung*, 629 F.2d 908, 919 (4th Cir. 1980). This choice of language—"was to be used" versus "could be used"—also avoided allowing the jury to convict defendant on a lesser standard that is present in other provisions of the Espionage Act. *See, e.g.*, § 793(d); *see also United States v. Morison*, 622 F. Supp. 1009, 1011 (D. Md. 1985) (holding that the "reason to believe could be

---

[7] Neither party disputes that § 794(a) is written disjunctively; that is, the instructions correctly required the government to show defendant acted with either "intent" or "reason to believe," not both. However, the parties sharply dispute whether the instructions in this case correctly defined "reason to believe."

7

used" language in § 793(d) does not impose a subjective *mens rea* element for a violation of § 793(d)).

Also important, the willfulness instruction provided in this case charged the jury that the government was required to prove beyond a reasonable doubt that defendant acted "with a bad purpose either to disobey or to disregard the law" and that "defendant knowingly did an act which the law forbids." Tr. at 1203–04. Accordingly, by no means was the jury allowed to convict on the basis of mere negligence. To the contrary, by directing the jury to determine that defendant acted with the knowledge that his actions were unlawful, the willfulness instruction reinforced the "reason to believe" instruction's charge that the jury must determine the circumstances of which defendant himself was aware and the consequences that defendant himself believed would result from his actions. Therefore, the instructions correctly directed the jury that it could not convict defendant on the basis of negligence, but rather that it must evaluate whether defendant acted with "reason to believe" based on the facts that defendant himself, subjectively, knew and the conclusion that defendant himself, subjectively, reasonably should have reached with respect to whether the NDI was to be used to harm the United States or advantage the PRC.

It is true, as defendant notes, that the jury instructions also charged the jury that "[i]n determining whether a defendant has 'reason to believe,' the question is whether a reasonable person in the defendant's position would have reached the same conclusion." *Id.* But this portion of the instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Henderson v. Kibbe*, 431 U.S. 145, 153 n.10 (1977). In this regard, the rest of the "reason to believe" instruction clearly directed the jury to decide whether defendant himself, subjectively, had reason to believe that the transmitted NDI was to be used to harm the United States or to benefit the PRC. *See* Tr. at 1200, 1203–04. Moreover, the instruction specifically

8

instructed the jury that "reason to believe" "does not mean defendant acted negligently." *Id.* at 1203. These aspects of the instruction eliminate the concern that the jury was wrongly instructed to decide that defendant acted with "reason to believe" based solely on what a hypothetical reasonable person would foresee as the consequence of defendant's actions. In other words, the instructions did not reduce § 794(a)'s scienter standard to negligence by charging the jury to consider only what a reasonable person would believe without considering what it was reasonable for defendant himself to believe. Rather, in the context of the entire instruction, the directive to consider "whether a reasonable person in the defendant's position would have reached the same conclusion [as defendant's conclusion]" merely served to assist the jury in determining what defendant himself reasonably should have concluded. Thus, in view of the instruction as a whole, the jury was adequately and properly charged that to convict defendant, the jury must find that defendant personally and subjectively believed or should have believed that the NDI was to be used for the prohibited purposes, and not that defendant was merely negligent in this regard.

This conclusion finds firm support in the Fourth Circuit's approval of similar jury instructions in *Truong*, an espionage case involving, as here, prosecution of defendants under §§ 794(a) and (c). 629 F.2d 908 (4th Cir. 1980). In *Truong*, the Fourth Circuit rejected the defendants' argument that the trial judge failed to give a proper scienter instruction and concluded instead that the instruction properly advised the jury on the scienter requirement. *Id.* at 918–19. Specifically, the Fourth Circuit approved of the district court's instruction that "'reason to believe' meant that a defendant must be shown to have known facts from which he concluded or reasonably should have concluded that the information could be used for the prohibited purposes" and that the jury could not "convict merely upon a finding that a defendant acted 'negligently.'" *Id.*

The instructions in this case were essentially the same as those approved by the Fourth Circuit in *Truong* as sufficient to avoid dilution of 794(a)'s scienter requirement. As in *Truong*, the jury instructions in this case charged the jury that to convict defendant, the jury must find that defendant acted with intent or reason to believe. Tr. at 1200. Also, as in *Truong*, the definition of "reason to believe" included in the instructions provided here directed the jury to determine the facts defendant subjectively knew and the conclusion defendant subjectively reached or should have reached. *Id.* at 1203. Indeed, the jury instructions in this case imposed an even more demanding standard than the instructions in *Truong* by requiring the jury to determine whether defendant concluded that the NDI "was to be used" for the prohibited purposes, whereas the *Truong* instructions directed the jury to decide only whether the defendants in that case concluded that the NDI "could be used" for those purposes. *Compare Truong*, 629 F.2d at 919 *with* Tr. at 1203. As already explained, this choice of language is significant because the "[was] to be used" language found in 794(a) imposes a stronger subjective scienter standard than does the objective "could be used" language in 793(d).

Moreover, the jury in the instant case was charged, as was the jury in *Truong*, that defendant must have "acted willfully, with a specific intent to do something the law forbids." Tr. at 1203–04. The Fourth Circuit in *Truong* determined that the willfulness instruction given in that case, which directed the jury to find that defendant acted "voluntarily . . . and with a specific intent to do something the law forbids," further ensured that the jury was properly directed that it must find the defendants in that case acted knowingly, not with mere negligence, to convict those defendants under § 794(a) and (c).[8] *Truong*, 629 F.2d at 919. Indeed, the willfulness instruction in

---

[8] Defendant incorrectly argues that the *Truong* instructions required a finding of bad faith in the willfulness instruction. A careful reading of *Truong* indicates that the district court instructed the jury that "willfully" entailed a finding of bad faith only with respect to a violation of 793(e); with respect to the charges under § 794(a) and (c), the

10

the present case went a step further to ensure that defendant was not convicted on the basis of negligence by directing the jury to determine that defendant acted "with a bad purpose either to disobey or to disregard the law" and that "defendant knowingly did an act which the law forbids." Tr. at 1203–04. As noted, this instruction served to focus the jury's attention on the circumstances and consequences of which defendant himself was consciously aware in the course of transmitting, attempting to transmit, and conspiring to transmit NDI to a foreign agent. Thus, the instructions in the instant case closely mirrored the jury instructions the Fourth Circuit in *Truong* concluded had adequately and properly instructed the jury on § 794(a)'s scienter standard and thus had not allowed the jury to convict defendant on the basis of mere negligence.[9]

Finally, the instruction on scienter in this case is fully consistent with cases that have described the "reason to believe" scienter requirement in § 794(a) and in other statutes with similar scienter language. In *Gorin v. United States*, the Supreme Court interpreted the Espionage Act and concluded that "intent or reason to believe"—the scienter standard found in § 794(a) and other sections of the Act—requires a showing that the defendant acted "in bad faith" or "with scienter." 312 U.S. 19, 27–28 (1941). In other words, § 794(a) requires a showing of conscious wrongdoing or guilty knowledge by the defendant as opposed to mere negligence. *See Morissette v. United States*, 342 U.S. 246, 252 (1952) (noting that the term "scienter" denotes guilty knowledge); *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (explaining that bad faith "implies the

---

district court defined "willfully" to mean "voluntarily and intentionally and with a specific intent to do something the law forbids." *Truong*, 629 F.2d at 919.

[9] It is true that the district court in *Truong* did not instruct the jury to consider whether a reasonable person in defendant's position would have reached the same conclusion as defendant. But, as already discussed, in the context of the entire instruction given in this case, the reasonable person component alone did not mislead the jury in this case to convict defendant on the basis of mere negligence. And in all other respects, the jury instructions in the instant case matched the instructions that the Fourth Circuit in *Truong* concluded had ensured that the jury convicted the defendants in that case on a showing that the defendants acted with the scienter required by § 794(a) and not on a showing of mere negligence.

11

conscious doing of a wrong" and is not merely negligence). Clearly, the instructions on scienter in this case incorporated the bad faith and scienter requirements of § 794(a), as interpreted by *Gorin*, by charging the jury that to convict defendant, the jury must find that defendant knew facts from which defendant himself should have concluded the NDI was to be used for the statutorily prohibited purposes, and not merely that defendant was negligent as to that fact.

Moreover, various courts of appeals that have construed statutes with scienter language similar to the "reason to believe" standard of § 794(a) have also required the government to prove the defendant knew facts from which it was reasonable for the defendant, personally, to believe the fact at issue. For example, the Tenth Circuit has explained that "[t]he scienter standard of 'knowing or having reasonable cause to believe' or one essentially identical to it is present in numerous federal statutes" and "involves a subjective inquiry that looks to whether the particular defendant accused of the crime knew or had reasonable cause to believe [the requisite facts]." *United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000). In other words, the Tenth Circuit explained, having reasonable cause to believe is akin to "actual knowledge" in that it must "be evaluated through the lens of this particular defendant" rather from the perspective "of a hypothetical reasonable man." *Id.* at 1268–69. Similarly, the Eighth Circuit held that a statute's "knowing or having reasonable cause to believe [the requisite facts]" standard "may be read as requiring proof only that a defendant possessed a gun that the so-called 'reasonable person' would have believed was stolen in the circumstances of the case," but "the better reading . . . requires proof that a defendant possessed a gun that it would have been reasonable for him or her, in particular, to believe was stolen." *United States v. Iron Eyes*, 367 F.3d 781, 784 (8th Cir. 2004).

Taken as a whole, the instruction on scienter in the present case is fully consistent with these cases, which show that the "reason to believe" requirement of § 794(a) requires the jury to

consider what defendant in particular should have reasonably believed, not merely what a hypothetical reasonable person would have believed. As already discussed, in defining "reason to believe," the instructions required the jury to determine the facts that defendant consciously knew and the conclusion that defendant subjectively reached or subjectively should have reached on the basis of those facts. Therefore, the jury instructions correctly described "reason to believe" as a state of mind involving guilty knowledge and conscious wrongdoing and correctly directed the jury to evaluate whether it was reasonable to believe the fact at issue—that the NDI transmitted in this case would be used for the prohibited purposes—through the lens of the particular defendant facing conviction.

In sum, the instructions in this case correctly tracked the strong scienter language of § 794(a) and directed the jury to determine whether defendant acted with a subjective knowledge of facts from which defendant subjectively should have concluded that the NDI that defendant transmitted, attempted to transmit, and conspired to transmit was to be used to harm the United States or benefit the PRC. Therefore, defendant's motion for a new trial must be denied.

### III.

Defendant next argues that a judgment of acquittal should issue with respect to Count 4 as the government's evidence on that count impermissibly effected a constructive amendment of the indictment, in violation of the Fifth Amendment.[10] Defendant's argument plainly fails. A

---

[10] The Fifth Amendment mandates that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). Thus, the Supreme Court has held that when the grand jury has charged a particular factual basis for an essential element of the crime, a conviction must rest on that charged basis, even though the indictment may have been drawn in more general terms to allow conviction to rest on another factual basis. *Id.* at 218. An essential element of a false statement offense under 18 U.S.C. § 1001(a)(2) is that the statement must be "false, fictitious, or fraudulent." *See United States v. Stover*, 499 F. App'x 267, 272 (4th Cir. 2012). Thus, in the context of false statement prosecutions, when the indictment has specifically alleged the facts that show the defendant's statement is false, the government must prove the statement is untruthful for the reason alleged in the indictment. *See United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006); *United States v. Crocker*, 568 F.2d 1049, 1060 (3d Cir. 1977).

comparison of the government's evidence with the indictment's allegations makes clear that the government's trial evidence fits squarely within the indictment's language; they are equivalent and hence there was no amendment of the indictment, constructive or otherwise.

The comparison of the indictment with the government's trial evidence yields the following essential equation. On one side of the equation, the indictment alleges that defendant falsely stated to FBI agents (i) that "he had not provided additional documents, beyond two unclassified white papers, to individuals he identified as PRC IOs," and (ii) that "he had never transmitted documents, other than a test message, using a covert communication device provided to him by the person he knew to be a PRC IO." *United States v. Mallory*, No. 1:17-cr-00154-TSE-1, Indictment at 17, ECF No. 134 (May 21, 2018). The indictment also charges that the first statement is false because defendant had previously provided at least two "classified documents" to PRC IO's and that the second statement is false because defendant had previously used the CovCom device to transmit at least two "classified documents" to a PRC IO. *Id.*

On the other side of the equation, the government's trial evidence showed that defendant had transmitted two documents containing classified information to the PRC IO's via the CovCom device. The two documents were the "Table of Contents" and "Document No. 1." Defendant handwrote the "Table of Contents" and therein described eight classified United States government documents that defendant had in his possession. Several pages of these eight classified documents that defendant had in his possession bore plainly visible classification markings. Similarly, "Document No. 1," which was labeled "S & T Targetting [*sic*] in China," included one typed page and two handwritten pages and contained information that was nearly identical to a classified PowerPoint proposal related to a human asset operation that defendant had helped to prepare and thus knew was classified. This PowerPoint document was plainly marked classified. Thus, in

creating the "Table of Contents" and "Document No. 1," defendant took classified information from classified documents that were clearly marked classified and included the information in the "Table of Contents" and "Document No. 1."

Clearly, the two sides of the equation—the indictment side and the trial evidence side—are essentially equal. The indictment charges that defendant passed two "classified documents" to the PRC IO's and the trial evidence demonstrates that defendant transmitted to the PRC IO's two documents containing classified information. The equation is that a document containing classified information is essentially a "classified document." Indeed, the commonsense definition of a "classified document" and the understanding of a "classified document" in common parlance is a document containing classified information. To conclude otherwise is to capitulate to sophistry.

Neither party cited authority that was on all fours factually with the facts of this case. Nonetheless, the Supreme Court's decision in *Stirone v. United States*, 361 U.S. 212 (1960), is instructive and, indeed, persuasive here. There, the Supreme Court concluded that the indictment had been constructively amended because the government, in the effort to prove the required element of interference with commerce, introduced evidence that commerce in steel had been interfered with, whereas the indictment charged that the defendant's activities had interfered with commerce in sand. *Id.* at 217–18. In reaching its conclusion that the government's evidence had constructively amended the indictment, the Supreme Court noted that the indictment, which charged interference with commerce in sand, could not "fairly be read as charging" interference with commerce in steel. *Id.* at 217. Here, in contrast with *Stirone*, the allegation in the indictment—that defendant had transmitted two "classified documents"—can "fairly be read as charging" that defendant had transmitted two documents containing classified information, information that defendant directly extracted from classified documents bearing classification markings. Thus, by

the reasoning in *Stirone*, no amendment to the indictment, constructive or otherwise, was effected by the government's trial evidence in this case.

Nor can it be said that defendant was in any way misled by the indictment in this regard. The trial evidence shows that defendant knew the information in the documents he was transmitting was classified information because he extracted the information from documents that were marked "classified" and that defendant therefore knew were classified. Thus, the trial evidence clearly shows that defendant knew he was transmitting to the PRC IO's documents that contained classified information, *i.e.* "classified documents," and hence no amendment to the indictment, constructive or otherwise, occurred.

Seeking to avoid this result, defendant argues that the indictment used the phrase "classified documents" as a term of art to refer solely to documents that are owned by, produced by or for, or under the control of the federal government and that have been marked with the legend "classified" by an original classifying authority, as provided in Executive Order 13526, 75 Fed., Reg. 707 (Dec. 29, 2009) ("the Order"). Defendant's argument fails, as an initial matter, because there is no reference in the indictment to reflect that the term "classified document" was restricted in the indictment by the terms of Executive Order 13526.[11] Moreover, as explained below, the Order does not define or limit the meaning of "classified document" in the manner that defendant contends.

Executive Order 13526 not itself define or limit "classified document" as a document that is marked classified and that is owned by, produced by or for, or under the control of the United States. In pertinent part, the Order purports only to list the conditions under which information

---

[11] It is worth noting that at no point during the trial did defendant request an instruction defining "classified document" as a document that is owned by, produced by or for, or under the control of the federal government and that has been marked "classified" by an original classifying authority

16

may be classified and to instruct an agency or person that originates a classified document to mark the portions of the document that are classified. *See* Executive Order 13526, ¶¶ 1.1, 1.6, 75 Fed., Reg. 707 (Dec. 29, 2009). Importantly, these provisions do not state that classified information becomes declassified if it is subsequently memorialized in a document that is not originated by a federal agency; to the contrary, the Order makes clear that classified information that is disclosed without authorization is not automatically declassified. *Id.* ¶ 1.1. Nor do the provisions state that a classified document's classification status depends on whether the document has been marked; rather, the need for markings is dependent on the information the classified document contains. *Id.* ¶ 1.6. Thus, while Executive Order 13526 instructs federal agencies to mark all classified documents the agencies originate, the Order does not purport to limit the definition of the phrase "classified documents" to documents that federal agencies originate or that have already been marked classified.[12]

In sum, the government adduced sufficient evidence to prove that defendant falsely stated (i) that he had not sent any documents, other than two unclassified white papers, to PRC IO's and (ii) that he had not sent any documents, other than a test message, to a PRC IO via the CovCom device, because the evidence at trial showed that defendant had used the CovCom device to transmit two classified documents to the PRC IO's, as alleged in the indictment. Therefore, defendant's motion for judgment of acquittal with respect to Count 4 must be denied.

---

[12] Likewise, the court's statement in *United States v. Rosen*, 445 F. Supp. 2d 602, 624 (2006), that "[a]ll classified documents are clearly marked with a classification level" is of no avail to defendant. The statement was made in the context of noting that that an individual who receives orally transmitted classified information may have more difficulty in recognizing that such information is classified than an individual who receives the classified information in clearly marked documentary form. *See id.* Thus, context reveals that *Rosen* is clearly inapposite to the instant case, because defendant here certainly knew the information in the documents he transmitted was classified. In no way did *Rosen* purport to define "classified documents" as a term of art, as defendant argues here.

An appropriate Order will issue.

Alexandria, Virginia
October 15, 2018

/s/
T. S. Ellis, III
United States District Judge