**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cr-254 (TSE) |
| | ) | |
| KEVIN PATRICK MALLORY, | ) | Sentencing: Nov. 2, 2018 |
| | ) | |
| *Defendant* | ) | |
| | ) | |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

Defendant Kevin Patrick Mallory, through counsel, hereby responds to the Government's Position With Respect to Sentencing (dkt 211), and the Government's Reply to the Defendant's Position on Sentencing (dkt 232). Both documents mischaracterize the evidence at trial.

1.      First, the government repeatedly represents that one of the two documents Mr. Mallory transmitted to his Chinese contact (the "White Paper," also known as "Document 1") revealed information about covert human assets known as "the Johnsons." *See* Government's Reply to Defendant's Position on Sentencing at 7 ("the White Paper involving the Johnsons" cannot be described as "being 'of relatively little value' [because] [i]t was a covert human asset operation utilizing the Johnsons."); *id.* at 9 (defense argument that the two documents transmitted "were of 'relatively little value,' is highly misleading, especially in the context of what [Mr. Mallory] provided about the 'Johnsons.'"); Government's Position With Respect to Sentencing at 17 ("Just a few weeks later, Defendant sent Document No. 1, containing information about the work the 'Johnsons' had done with DIA to the Chinese"); *id.* at 7 ("the 'Johnsons,' . . . were the subject of the documents referred to as Document No. 1 and Document No. 2 at trial."); *id.* at 8

("Nonetheless, Defendant . . . passed . . . information regarding the 'Johnsons' to Chinese intelligence officers").

The evidence at trial, however, established that Document 1 – a document that was transmitted to Michael Yang, the Chinese intelligence officer -- says absolutely nothing about "the Johnsons." Moreover, Document 2, a power point presentation that contained information about "the Johnsons" was never transmitted to Michael Yang. Indeed, government witness Hugh Higgins testified at the trial that all of the specific information about "the Johnsons" was contained within Document 2, a Power-Point presentation, and not contained in Document 1, the white paper. *See* Testimony of Hugh Higgins, June 5, 2018 ("Higgins Tr."), at 76-78. Specifically, when defense counsel reviewed with Mr. Higgins each piece of information in Document 2 that related to the Johnsons, he agreed that none of that information was carried over into the more general "White Paper" that Mr. Mallory actually transmitted:

> Q.  Now I'd like to go to slide 6 [of Document 2] or excuse me. Slide 5, the bottom two entries.
>
> A.  Yes.
>
> Q.  That's some of the information that could lead to an asset, right?
>
> A.  Absolutely.
>
> Q.  None of that is carried over into Document 1, is it?
>
> A.  No, it is not.
>
> Q.  Slide 6 all of that fits in that same category that it could lead to an asset, right?
>
> A.  That is correct.
>
> Q.  None of that is carried over into Document 1?
>
> A.  It is not.

Q.  Slide 8.  This is what we just talked about, an entity that started
[Note: probably should read 'is targeted'] for collection?

A.  Yes.

Q.  None of that is carried over into Document 1?

A.  No, it's not.

Q.  Slide 9.  And looking at the – any of these bullet points.  None
of those are carried over into Document 1, is that right?

A.  That is correct.[1]

In other words, Mr. Higgins agreed that while the power-point slides known as Document 2 contained information that could have led either to the Johnsons or to the entity their operation targeted (and thus to the Johnsons), *none of that information was carried over to the White Paper known as Document 1 that Mr. Mallory transmitted.*

The actual exhibit shows the same thing that Mr. Higgins testified to at the trial.  *See* Gov. Trial Exh. 9-3-E-1 (classified copy of Document 1).  In other words, the only substantive document that the government proved Mr. Mallory sent to a Chinese intelligence officer contained absolutely no information about "the Johnsons."  The government's argument to the contrary – repeatedly telling this Court that Mr. Mallory actually transmitted identifying information about the Johnsons to his Chinese contact when he sent the "White Paper" – is patently false.

2.      Second, the government repeatedly represents that evidence drawn from the forensic examination of the Samsung cell phone established that Mr. Mallory tried to send Document 2, the document with information about "the Johnsons," to Michael Yang.   *See* Government's Position With Respect to Sentencing at 17 ("A few days after [transmitting Document 1], Defendant completed the steps needed to transmit Document No. 2"); *id.* at 8 n. 8

---

[1]  *See* Higgins Tr. at 77 line 7 through 78 line 3.

("Yang requesting and Defendant stating he was sending Document No. 2"); Government's Reply to Defendant's Position on Sentencing at 8 n. 6 ("On May 5th, the Defendant dutifully attempted to send . . . Document No. 2, just as Michael Yang had requested."); *id.* at 9 ("On May 5th, consistent with Michael Yang's request from two days earlier, [Mr. Mallory] attempted to send Document # 2").

In each of those instances, the government references a text message on May 5 sent by Mr. Mallory to his Chinese contact in which Mr. Mallory said "Send 2" (Gov. Exh. 8-6, Row 93) and an accompanying failed transmission of a document at the same time (Gov. Exh. 8-21 at 8-9). *See, e.g.,* Government's Reply to Defendant's Position on Sentencing at 8 n. 6 (citing to Gov. Exh. 8-6, Rows 92-93, as factual basis for allegation that Mr. Mallory "attempted to send . . . Document No. 2"). The trial evidence, in two distinct ways, clearly refutes the government's claim that this evidenced an attempt to send Document 2.

*First*, the text conversations immediately preceding and following "Send 2" explain what that text (and the immediately preceding "Send 1" text) referenced. Specifically, when Mr. Mallory sent the "white paper" on May 1 (Document 1), he also sent with it two pages of handwritten notes on yellow paper which were later reviewed and determined to be unclassified. On the evening of May 5, after his Chinese contact had complained on May 3 that he could not read the handwriting on those two pages (*see* Gov. Exh. 8-6, Row 34), Mr. Mallory said "I will type the two pages of notes (no. 1) and send later today or tomorrow." *See id.*, Row 89. Then, three messages later, after not communicating for over thirty minutes, Mr. Mallory sent the "Send 1" and "Send 2" texts (and attempted document transmissions). *See id.*, Rows 92-93. Immediately thereafter, he explained that "FYI . . . . The two pages of hand notes are unrelated to the one page above it" (i.e., the white paper). *See id.*, Rows 94-95. In other words, the text messages that

immediately precede and immediately follow the "Send 2" message refer explicitly to the unclassified handwritten pages Mr. Mallory had transmitted on May 1 along with Document 1, and explain that the "Send 1" and "Send 2" messages related to attempted transmissions of typed versions of those pages.

*Second*, the government expert who testified about these transmissions said the file names of the documents associated with those attempted transmissions did not correspond to any of the classified documents, including Document 2, but likely related to the unclassified handwritten notes. Specifically, when government forensic expert James Hamrock (who reverse-engineered the software on the "covcom" device in order to testify about the transmissions and attempted transmissions made by Mr. Mallory) was asked about the "Send 2" sequence, he testified as follows:

> Q. Now I wanted to go to – you talk about the Xposed error logs. That was Section 2 of Document 8-21 on Page 8 of that – of 8-21.
>
> A. Yes.
>
> Q. . . . . Now you said that these roughly – these correspond with messages that you identified as messages being a Send 1 and a Send 2 message, right?
>
> A. Yes.
>
> [. . . ]
>
> Q. Now also those Xposed logs relating to the – what you said were attempted transmissions at that time?
>
> A. They were transmissions.
>
> Q. They have file names in them, don't they?
>
> A. Yes.
>
> [ . . . ]

Q. So do [those transmissions] match up to any of the documents, for example, in this binder [of the classified documents found on the "covcom" device]?

A. No.

Q. That I'm talking about – the binder with Government Exhibit C8-7 through C8-11?

A. No. You would go by the two pages of hand notes that it correlates to probably one of those two.[2]

In other words, Mr. Hamrock's forensic analysis revealed exactly what Mr. Mallory contemporaneously said in the text messages accompanying the "Send 2" message – that the attempted transmission at that time was of some handwritten pages, and did not match any of the classified documents, such as Document 2. Although the government repeatedly mischaracterizes the evidence to argue that Mr. Mallory attempted to send Document 2, such repetition does not thereby make it true.

3.  Third, the government argues that the relatively short duration of the offense should not be considered mitigating because Mr. Mallory "did everything possible to conceal his crimes." *See* Government's Reply to Defendant's Position on Sentencing at 11 n. 8. That is indisputably not the case here: to claim that Mr. Mallory "did everything possible to conceal is crimes" is simply to ignore the facts. The list of possible things Mr. Mallory could have done, but did not do, to conceal the offense includes that: i) he could have not told the CIA of his contacts with Chinese intelligence; ii) he could have not repeated and intensified those contacts with the CIA once the Chinese were finally asking him to send documents; iii) he could have not told the CIA of the covcom device; iv) he could have not brought the covcom device to a meeting with the FBI; v) he

---

[2]  *See* Testimony of James Hamrock, May 31, 2018, at 75 line 22 through 78 line 12.

could have refused to have the covcom device imaged by the FBI;[3] vi) he could have not brought

the written instructions for using the covcom device to the meeting; or vii) he could have thrown

the covcom device away before showing it to the FBI.  The point here is not to argue guilt or

innocence, but rather to emphasize that the government's arguments in its sentencing memoranda

are untethered to the facts of the case, and should be viewed with skepticism.


Dated:  October 30, 2018                                   Respectfully submitted,

                                                           KEVIN PATRICK MALLORY


                                                           By Counsel,


                                                           By: _____/s/_____
                                                           Geremy  C. Kamens
                                                           Va. Bar. No. 41596
                                                           Todd Richman
                                                           Va. Bar No. 41834
                                                           Office of the Federal Public Defender
                                                           Attorneys for Mr. Mallory
                                                           1650 King Street, Suite 500
                                                           Alexandria, VA 22314
                                                           (703) 600-0848 (T)
                                                           (703) 600-0880 (F)
                                                           Geremy_Kamens@fd.org

---

[3]   The government makes much of the fact that Mr. Mallory, according to the FBI, was surprised to see that the device had saved some of his text communications with his Chinese contact.  From that fact, the government contends that Mr. Mallory did not knowingly provide anything of value to the United States when he permitted the covcom device to be copied.  *See* Government's Reply to Defendant's Position on Sentencing at 13.  But even assuming that Mr. Mallory believed the text messages would not appear, he was permitting the phone and its software – the covcom mechanism – to be copied and thus rendered effectively worthless for future communications with the Chinese.  The government's contention that Mr. Mallory's provision of the covcom device to the FBI gave the government nothing of intelligence value thus ignores the fact that he disclosed a previously unknown technological means used by Chinese intelligence agents to communicate.  Mr. Mallory's decision to compromise a piece of technology of significant value to Chinese intelligence was obviously of intelligence value to the United States, a fact confirmed by the testimony of FBI special agent Paul Lee at the trial.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2018, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

John T. Gibbs, Esq.
Colleen E. Garcia, Esq.
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22314

Jennifer K. Gellie, Esq.
Trial Attorney
United States Department of Justice
600 E. St., NW
Washington, DC 20004


                                      /s/
                                  Geremy C. Kamens
                                  Va. Bar No. 41596
                                  Federal Public Defender
                                  Attorney for Mr. Mallory
                                  Office of the Federal Public Defender
                                  1650 King Street, Suite 500
                                  Alexandria, VA 22314
                                  (703) 600-0848 (T)
                                  (703) 600-0880 (F)
                                  Geremy_Kamens@fd.org