**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                           ) | Criminal No. 1:17-CR-00154 (TSE) |
| ) | |
| KEVIN PATRICK MALLORY,     ) | |
| ) | |
| Defendant                           ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM OF
AUTHORITY REGARDING CONDITIONS OF DETENTION**

COMES NOW the United States and submits this Response to Defendant Kevin Patrick Mallory's May 24, 2019 Memorandum of Authority Regarding Conditions of Detention. Defendant misconstrues the restrictions imposed. Under the current Special Administrative Measures, Defendant is not barred from communicating with his wife in Mandarin Chinese. Rather, he must merely provide adequate notice such that the government may ensure a Mandarin-speaking interpreter is available to listen to the call in real time.

That clarification aside, Defendant's motion to the Court is premature and improper. Defendant admits he has yet to exhaust his administrative remedies, which the Fourth Circuit has held he must exhaust before challenging any SAMs restrictions in federal court. Once he has exhausted his administrative remedies, if he is still aggrieved, Defendant may file a civil action within the district in which he is housed. In any event, even were the issue appropriately before this Court, Defendant fails to show how conditions of detention are not rationally related to a legitimate penological interest. Accordingly, this Court should deny Defendant's motion.

**I.      The Special Administrative Measures At Issue**

The Attorney General has plenary authority over the federal prison system and has delegated this authority to the Bureau of Prisons ("BOP").  *See e.g.* 18 U.S.C. §§ 3621, 4401(b), 4042.  Pursuant to 28 C.F.R. § 501.2, upon the direction of the Attorney General, the BOP may impose Special Administrative Measures ("SAMs") upon inmate communications "to prevent disclosure of classified information."  SAMs were imposed on Defendant after he called his wife and son from the Alexandria Detention Center following his arrest and attempted to direct them to certain classified materials in his home.  *See* Transcript of June 24, 2017 Jail Call, Government Trial Exhibit 11-2T (attached as Ex. A).  During that call, Defendant spoke in Mandarin Chinese and specifically told his wife "*I don't want to say it in English*" before noting that "*they know it too, they will figure it out soon.*"  *Id.* at 3.  The government interprets "they know it too, they will figure it out soon" to be a reference to the fact that government linguists would eventually be able to translate anything spoken in Mandarin by Defendant, though it would take time.

It is precisely this translation lag, and the concern that Defendant could reveal the years' of classified information stored in his own mind, that led to the imposition of SAMs here.  The Attorney General issued SAMs as to Defendant on December 11, 2017.  *See* Memorandum Regarding Origination of Special Administrative Measures Pursuant to 28 C.F.R. § 501.2 for Federal United States Marshals Service Pretrial Inmate Kevin Patrick Mallory ("Mallory SAMs") (Ex. B).  Post-conviction and post-sentencing, Defendant filed a motion with this Court requesting it "lift the prohibition on Mr. Mallory using Mandarin Chinese to speak with his wife[.]"  *See* Defendant's Memorandum of Authority Regarding Conditions of Detention ("Def. Br.") [Dkt. 270].

## II.   DEFENDANT HAS YET TO PURSUE ADMINISTRATIVE REMEDIES

As an initial matter, the SAMs pertaining to Defendant do not entirely restrict his ability to speak to his to his wife in Mandarin Chinese.  *See* Mallory SAMs at 9 (Ex. B).  Specifically, the SAMs provision regarding telephone communications states that:

> All telephone calls shall be in English unless a fluent USMS/BOP/DF- or FBI- approved interpreter/translator is available to contemporaneously monitor the telephone call. Arranging for an interpreter/translator may require at least fourteen (14) days advance notice.

*Id.*

Further, the SAMs regulation specifically provides an avenue through which aggrieved prisoners may seek review of any special restrictions imposed.  28 C.F.R. § 501.2(d) ("The affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 CFR part 542.").  A prisoner ***must*** exhaust[1] his administrative remedies before challenging any SAMs restrictions in federal court. *United States v. Abu Ali*, 528 F.3d 210, 244 (4th Cir. 2008); *see also United States v. Cureton*, 719 F. App'x 190, 194 (4th Cir. 2018); *Yousef v. Reno*, 254 F.3d 1214, 1222-23 (10th Cir. 2001).  As Defendant concedes, he has not exhausted his administrative remedies.  Def. Br. at 2.  His

---

[1] "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law.  The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal citations and quotation marks omitted); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (holding that the exhaustion requirement "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances'" and the "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account").  Exhaustion serves two purposes: (1) it gives the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court"; and (2) it promote efficiency by resolving issues more quickly and economically through administrative proceedings and producing a useful record for subsequent judicial consideration if necessary.  *Woodford* at 88-89; *see also Jones v. Bock*, 549 U.S. 199, 204 (2007) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

suggestion that there is an open question as to whether he is required to do so is contrary to binding Fourth Circuit precedent, which holds expressly that, even in the context of a motion made in criminal proceedings, exhaustion is mandatory. *Abu Ali*, 528 F.3d at 244. Consequently, the motion must be denied for failure to exhaust administrative remedies.

### III. THE APPROPRIATE VEHICLE TO CHALLENGE POST-CONVICTION CONDITIONS OF CONFINEMENT IS THROUGH A CIVIL ACTION

Defendant's motion is further improper because the proper vehicle to challenge post-conviction conditions of confinement is through a civil action filed in the district in which the prisoner is housed. *See, e.g.*, *Martinez v. Brooks,* No. CIV.A. 03-1021-AM, 2004 WL 3214416, at *3 (E.D. Va. July 26, 2004) (Ellis, J.) ("[W]here, as here, the [post-conviction] challenge is to conditions of confinement, the claim must be brought as a civil rights action.").

Defendant's reliance on cases involving pre-trial detention is inapposite. Following a Defendant's conviction and sentencing, the sentencing court ceases to have a role in the location of the prisoner or the conditions of confinement. *See, e.g.*, *United States v. Huss*, 520 F.2d 598 (2d Cir. 1975) (holding that a sentencing court has no power to control the place or conditions of confinement). By statute, the sentencing court's authority is to issue a term of imprisonment, if it determines that imprisonment is appropriate. 18 U.S.C. §§ 3551, 3553. But the statute does not, as general matter, provide the sentencing court with the power to control the place of confinement or the conditions of confinement. Instead, the implementation of the sentence is generally left to the discretion of the Bureau of Prisons. *See* 18 U.S.C. §§ 3558, 3621. Were it not so, criminal Defendants could repeatedly file motions in their closed criminal proceedings challenging various conditions of their confinement. Instead, as this Court has recognized, the appropriate vehicle, once the prisoner has exhausted administrative remedies, is to file a civil action in the district in which the prisoner is housed. *See, e.g.*, *Martinez*, 2004 WL 3214416 at *3. For this additional

4

reason, the motion should be denied.

## IV. DEFENDANT FAILS TO SHOW THE CONDITIONS ARE IMPROPER

Even were his motion to this Court not premature and improper, Defendant fails to meet his heavy burden under *Turner v. Safley*, 482 US 78 (1987), to show that the challenged restriction is not rationally related to a legitimate penological interest. In *Turner*, the Supreme Court established a deferential standard for reviewing restrictions on prisoners' constitutional rights, holding that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This deferential standard reflects the principle that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948), *overruled on other grounds*, *McCleskey v. Zant*, 499 U.S. 467 (1991); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (recognizing that inmates "retain those First Amendment rights of speech 'not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system.'" (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974))). Under this standard, "it 'does not matter whether [a court] agree[s] with' the [BOP] or whether the policy 'in fact advances' the jail's legitimate interests. The only question that [the court] must answer is whether the [BOP's] judgment was 'rational,' that is, whether the [BOP] might reasonably have thought that the policy would advance its interests." *Sperry v. Werholtz*, 413 F. App'x 31, 40 (10th Cir. 2011) (quoting *Amatel v. Reno*, 156 F.3d 192, 199 (D.C. Cir. 1998)); *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) (same); *see also Johnson v. California*, 543 U.S. 499, 513 (2005) (observing that *Turner* does not require proof a policy actually advanced the goal, but only that officials "might reasonably have thought" it would).

The government has a well-established, legitimate penological interest in protecting national security. *Rezaq v Nalley*, 677 F.3d 1001, 1014 (10th Cir. 2012). While prison administrators are generally entitled to substantial deference in the ordinary course, *Overton*, 539 *v. Bazzetta*, 539 U.S. 126, 132 (2003), that deference is even greater in the realm of national security. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-36 (2010); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) ("Indeed, 'courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs[.]'" (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)); *Franklin v. Massachusetts*, 505 U.S. 788, 818 (1992) (judicial deference "pervades the area of national security"). "[N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess." *Humanitarian Law*, 561 U.S. at 34. A court must defer to the government's predictive judgment in relation to national security because "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment." *Egan*, 484 U.S. at 529.

Based on this legitimate penological interest in protecting national security, courts have upheld SAMs restrictions in the context of prisoners convicted of violations of the Espionage Act. *See, e.g.*, *Gowadia v. Stearns*, 596 F. App'x 667, 673 (10th Cir. 2014); *Nicholson v. Brennan*, No. 15-cv-01999-KLM, 2017 WL 4337896 (D. Colo. Sept. 28, 2017). As the Tenth Circuit concluded in *Gowadia*, there is "an obvious and reasonable relationship between Gowadia's crimes and the measures the BOP implemented to restrict his communications." 596 F. App'x at 673. Here, there is "an obvious and reasonable relationship" between Defendant's crimes – and his subsequent attempt to use communications with his wife in Mandarin Chinese to cover up those crimes – and the SAMs currently in effect. In particular, the challenged restriction is necessary so that the

government may line up a Mandarin Chinese translator to monitor Defendant's communications in real time and ensure that Defendant does not again try to violate the law by speaking in a foreign language. Defendant is not prohibited from speaking Mandarin Chinese with his wife entirely; he simply must give notice so that the government can properly monitor his conversations in real-time. There is undoubtedly a rational relationship for this restriction in light of Defendant's crimes and his post-arrest conduct. Thus, even were this issue ripe for consideration by this Court, which it is not, Defendant is unable to meet his burden of proving the SAMs are not rationally related to a legitimate penological interest.

## IV.   CONCLUSION

For the foregoing reasons, the government requests this Court deny Defendant's motion.

Dated May 29, 2019

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:   /s/ Jennifer K. Gellie
JENNIFER KENNEDY GELLIE
Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Tel.: (202) 233-0986
Fax: (202) 233-2146
Jennifer.Gellie@usdoj.gov

JOHN T. GIBBS
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
John.Gibbs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have caused an electronic copy of the *GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM OF AUTHORITY REGARDING CONDITIONS OF DETENTION* to be served via ECF upon counsel for Defendant Kevin Patrick Mallory.

                By:            /s/
                     Jennifer Kennedy Gellie
                     DC Bar No. 1020976
                     Trial Attorney
                     National Security Division
                     United States Department of Justice
                     950 Pennsylvania Ave., NW
                     Washington, D.C. 20530
                     Tel.: (202) 233-0986
                     Fax: (202) 233-2146
                     Jennifer.Gellie@usdoj.gov